

F I L E D

APR **1 4** 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
APR **1 4** 2008

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| SHEILA A. MANNIX, individually and as | ) | Case No. **08 C 1883** |
| next friend of KEVIN MANNIX SHEETZ | ) | |
| and BRIAN SPERRY SHEETZ | ) | Emergency Judge Matthew F. Kennelly |
| Plaintiffs, | ) | |
|  | ) | Presiding Judge Milton I. Shadur |
| v. | ) | |
|  | ) | Magistrate Judge Michael T. Mason |
| DANIEL P. SHEETZ, SR. | ) | |
| Defendant. | ) | Jury Demand Requested |
|  | ) | |

---

## AFFIDAVIT OF SHEILA A. MANNIX IN SUPPORT OF PLAINTIFFS'

## VERIFIED MOTION TO RECONSIDER THE ORDER OF EM. JUDGE KENNELLY

## ENTERED ON 4/2/08 AND AMEND IN CO-DEFENDANTS AND

## VERIFIED MOTION TO RECONSIDER THE MINUTE ORDER ENTERED BY JUDGE

## SHADUR ON 4/3/08 AND INVOKE 18 U.S.C. § 4: MISPRISION OF FELONY
### *Prepared and Filed as an Offer of Proof*

---

I, your affiant, Sheila A. Mannix, being first duly sworn, on oath, states as follows:

1. I am of legal age and competent. This affidavit is made on my personal knowledge of all matters set forth herein. If sworn and called as a witness in this matter, I could, and I would, testify competently as to each fact set forth herein.

2. Under penalties of perjury as provided by law, I certify that the statements set forth in this instrument and in Plaintiffs' **Verified Motion to Reconsider the Order of Em. Judge Kennelly Entered on 4/2/08 and Amend in Co-Defendants** and **Verified Motion to Reconsider the Minute Order Entered by Judge Shadur on 4/3/08 and Invoke 18 U.S.C. 4: Misprision of Felony**, incorporated herein by reference, are true and correct, except as to such matters directly herein and incorporated herein stated to be on information and belief and as to such matters, I certify aforesaid that I verily believe the same to be true.

3.  Further, I certify that to the best of my knowledge that all exhibits attached to this instrument and the incorporated documents are copies of authentic documents.

4.  I am the co-founder of Illinois Family Court Accountability Advocates (IFCAA) which was created in June 2005 after myself, a PhD-level clinical psychologist and trained research neuroscientist, and co-founder, Karyn Mehringer, who a masters degree in forensic psychology, were interviewed by an FBI Special Agent in Chicago regarding the criminal acts being committed against us and our children by corrupt public officials in the family court located at the Richard J. Daley Center in downtown Chicago. The only issue with the FBI agent was how we prove the criminal acts - not whether criminal acts were being committed. These acts included extortion, bribery, fraud, coercion under duress, obstructing justice, tampering with, harassment of, and retaliation against witnesses including child witnesses, and child endangerment. We created IFCAA to stop the avarice-driven corruption in Illinois' family courts that is hurting the innocent children of divorcing and divorced parents. Given our higher educations in psychology, our partnership made perfect sense because only sociopathic individuals who have chosen careers in the public trust which require obedience to professional and ethical codes of conduct would maliciously engage in corruption that targets the exploitation of innocent children for the individuals' personal financial gain.

5.  On September 28, 2005, IFCAA held its first peaceful assembly in front of the Thompson State Building across from the Richard J. Dailey Center in which the Circuit Court of Cook County is located. Ms. Mehringer and I held up a rally banner attached hereto as **Exhibit A** which details a quote by David Wessel, a local court-appointed attorney for children that he has made to the mothers of those children to illegally intimidate them. It reads, **"You should view your situation as if you've been dragged into a dark alley and you're being mugged and there is nothing you can do about it."**

6.  The rally banner also has on it the cover of a book about one family's experiences with the racketeering enterprise operating in the Cook County Family Court, specifically, <u>All But My Soul: Abuse Beyond Control</u> by Dr. Jeanne King. [Dr. King is available to testimony at RICO trial.] The book articulately details with documentation the well-established patterns of practice and actors in the illicit enterprise many of which actors are still active to this very day including court-appointed child attorney, David Wessel, Cook County Circuit Court Chief Judge Timothy Evans, Presiding Judge of the Domestic Relations Division of Cook County, Moshe Jacobius, and Associate Judge Karen G. Shields when she was an attorney with Nadler, Pritikin, Mirabelli, & Shields, LLC.

7.  Mr. Wessel confirmed on court record on August 19, 2005 that he stated the above quote to me. I have independent confirmation that he has intimidated other mothers with these same words. Tragically, beyond proving criminal intent, his words are a **hauntingly accurate analogy** of the reality in Family Courts and Child Protective Services (CPS) agencies nation-wide operating in direct violation of federal RICO law.

8. The analogy substantiates the fact, documented in innumerable family court and CPS agency records across the nation, that through the court's exploitation of children, federally-protected, constitutional and civil rights and liberty interests are <u>usurped by a financial motive</u> in illicit racketeering enterprises operating similar to street gang muggings of innocent citizens which represent **a clear and present danger to the administration of justice**.

9. Also, in the Year 2005, Ms. Mehringer and I were forced to go pro se. I testified about this on October 13, 2006 in the D'Agostino v. Lynch hearing [Case No. 98 CH 11007] as follows [Page 54, Line 12 – Page 56, Line 16]:

> **Mr. Lynch:** How did we meet? Let me maybe refresh your memory. Robert Corr. Robert Corr was another individual, a businessman - -
>
> **Dr. Mannix:** Okay. That's right. That's right.
>
> **Mr. Lynch:** - - had gone and went up against Pepsi because of what they did to his company. And he also because of what took place in that case was incarcerated; now, we know, falsely, by Judge Shields and - -
>
> **Dr. Mannix:** Okay. So that's what happened. My case came to a head very quickly with Judge Donegan because I had an attorney, who was very good, a technical attorney (Glen Kaufman). And he had boxed them in because he defaulted my ex-husband two years ago with a financial Illinois Supreme Court Rule 219 Default, which has, by the way, never been enforced. I've had to go to Lake County and McHenry County to get that Cook County order enforced because Judge Donegan refused to enforce it. Then his (Kaufman) next plan was to default my ex-husband on the false sole custody suit that he filed back in 2002 after I had gotten an arrears award and child support award. So the next step that Mr. Kaufman was doing - - and he had filed a second petition for Supreme Court Rule 219 Default on the custody, and so Judge Vega recuse(d) himself, and I was assigned to Judge Donegan. It only took about three months. And Mr. Kaufman , again, told me in the hallway outside of 1506, you're never going to get justice in this building.
>
> **Mr Lynch:** And why is that? I mean, what have you uncovered?
>
> **Dr. Mannix:** Well, so that's what I did. I went pro se.
>
> **Mr Lynch:** And why is that? Why do individuals once they reach a point are

3

                                      **forced to go pro se?**

**Dr. Mannix:** **Well, partly, because no attorney can maintain a practice and take on the corruption. And so I analyzed the situation. My expertise is (in) multi-(variate) analysis and multi-layered intervention approaches for complex problems. So I analyzed all the players and figured out how it was working. And then I started networking and then realized that the key to start the infiltration of the racketeering system is to become pro se. And once you become pro se, you really throw a wrench into it because you start putting the truth into the record. And you start wanting (the proceedings) to follow the law because {one of} these individual(s) actually didn't follow any procedural law. It's very evident.**

10. In 2005, after (1) going pro se in our individual cases with Judge Shields and Judge Donegan and putting the truth into the records and (2) forming IFCAA and having our first peaceful assembly, the criminal retaliation against us and individuals associated with us was immediate and extreme. Within a month of our first peaceful assembly, my children were judicially kidnapped and the ongoing threats of false incarceration commenced. Within three and six months, respectively, our federally-protected, constitutionally-secured equal access to the justice rights were severed in void orders entered in the clear absence of all jurisdiction for no just cause or authority of law, i.e., solely in malicious acts of abuse of power to cover-up their own crimes.

11. I have created this affidavit in support of **Verified Motion to Reconsider the Order of Em. Judge Kennelly Entered on 4/2/08 and Amend in Co-Defendants** and **Verified Motion to Reconsider the Minute Order Entered by Judge Shadur on 4/3/08 and Invoke 18 U.S.C. 4: Misprision of Felony** for the specific purpose of entering into the record of this federal question action under civil RICO law as defined by 18 USC § 1961, which states in pertinent part, **"(1) "racketeering activity" means (A) any act of threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (…), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: … section 1512 (relating to the tampering with a witness, victim, or an informant), section 1513 (relating to retaliation against a witness, victim, or an informant)…,"** documents evidencing violations of same as specifically set for at Page 4, Paragraph 18 of the underlying emergency complaint which stated in pertinent part:

          "18. Verifiable past threats of and/or actual false arrests, prosecution, malicious use of process, and/or incarceration against Dr. Mannix and/or individuals associated with her and/or the lawful, volunteer, non-profit organization she co-founded with Karyn Mehringer in June 2005, Illinois Family Court Accountability Advocates (IFCAA), have occurred on but are

not limited to the following dates: [Listed Below with Exhibits and/or Certified Details]  The above factual allegations can be proven by the following: (a) eye witnesses, (b) court transcripts, (c) the audiotape of the February 2, 2007 proceeding before the late Judge Donegan, (d) multiple verifiably false Incident/Offense Reports, (e) multiple police reports, (f) court records, and (g) Lake County Recorder's Office Document 6324306."

12. October 14, 2005 (against Dr. Mannix by Judge Donegan and court-appointed attorney David Wessel): **Exhibit B** (affidavit)  Kevin and Brian were judicially kidnapped in conspiracy with court-appointed attorney, David Wessel, two weeks later. (See October 31, 2005 Certified Report of Proceedings)

13. December 15, 2005 (Dr. Mannix by Judge Donegan): **Exhibit C** (transcript)

14. December 16, 2005 (Karyn Mehringer by Judge Shields): **Exhibit D** (affidavit)

15. March 30, 2006 (Dr. Mannix by Judge Donegan): **Exhibit E** (transcript)

16. April 26, 2006 (Dr. Mannix and Karyn Mehringer by Judge Shields and those acting on her behalf): **Exhibit F** (three transcripts: 04/26/06, 05/15/06, and 06/07/06)  Judge Shields held me in unlawful detainment for one hour while her Courtroom Deputy "Louie" Sanchez entered the small room I was held in, closed the door behind him and came at me in a verbally and physically threatening and intimidating manner.  I screamed for help and Deputy Banks quickly opened the door.  Sanchez bee-lined out of there. Shortly thereafter, I overhear three deputies, Sanchez, Aguilla, and another male deputy, conspiring to falsely arrest Ms. Mehringer for being in restricted areas of the courthouse. When I came to the threshold of the small room I was held in so that the deputies could see that I was overhearing them, the group quickly dispersed.

17. June 20, 2006 (Dr. Mannix by Judge Donegan): See June 20, 2006 Certified Report of Proceedings

18. July 25, 2006 (Dr. Mannix by Judge Donegan): See July 25, 2006 Certified Report of Proceedings

19. August 16-17, 2006 (Dr. Mannix and Karyn Mehringer by Judge Shields and those acting on her behalf):  In retaliation for IFCAA exposing Judge Shields' participation in illicit acts (**Exhibit G** – August 10, 2006 Judge White/Lynch transcript), at 5:00 p.m. on August 16, 2006, Judge Shields maliciously initiated a criminally defamatory police report against three IFCAA moms to obstruct the lawful proceedings the following day for Ms. Mehringer's **Emergency Motion for Judicial Admission or Denial by Judge Karen G. Shields Regarding Knowledge of and/or Participation in Alleged Criminal Acts Within and Across State Lines by Judges in the Circuit Court of Cook County, Illinois, and Other Relief *Instanter***.  Said defamatory report caused a fraudulent

Intelligence Bulletin to be issued with our Illinois Drivers' License pictures across the top like a WANTED poster (**Exhibit H**), and our personal information was turned in to the Illinois Statewide Terrorism Intelligence Center as alleged domestic terrorists. Two Cook County Sheriff's Office Detective harassed and intimidated Ms. Mehringer at her home on the evening of August 17, 2006. **Exhibit I** (affidavit)

20. September 5, 2006 (Dr. Mannix by attorney Enrico Mirabelli): **Exhibit J** (facsimile)  Mr. Mirabelli threatened me with malicious prosecution.  I played his bluff.  No response from Judge Shields.  Besides credible journalists, even a senior federal judge has personally told me that Karen Shields is the daughter of convicted "Greylord" ex-judge David Shields.

21. October 4, 2006 (Dr. Mannix and Michael Lynch by Judge White):  After IFCAA co-member Michael Lynch presented his **Verified Motion for Judicial Admission or Denial by Judge Alexander P. White Regarding Knowledge of and/or Participation in Alleged Criminal Acts Within and Across State Lines by Judges in the Circuit Court of Cook County, Illinois, and Request for Self-Disqualification** *Instanter*, Judge White threatened us from the bench and continued the matter for sixty day while he consulted with his attorney, Illinois Attorney General Lisa Madigan. (See October 4, 2006 Certified Report of Proceedings)

22. October 13, 2006 (Michael Lynch by Judge McNamara):  IFCAA co-member Lynch was falsely incarcerated by ex-judge Paddy McNamara. [See Exhibit F of underlying emergency complaint.]

23. October 16 and 17, 2006 (Marie Szczypta and Dr. Mannix by Judge Shields): **Exhibit K** (facsimile)  Also see certified deposition transcript.

24. December 20, 2006 (Dr. Mannix by Judge White): **Exhibit L** (affidavit)

25. February 2, 2007 (Dr. Mannix and Jamie Hernandez by Judge Donegan in conspiracy with the Defendant, court-appointed attorney David Wessel, Defendant's attorney Mitchell Asher, and those acting on their behalf): **Exhibits M and N** (affidavits) Also see certified transcript, audiotape, and two more witnesses' affidavits.

26. February 23, 2007 (Dr. Mannix by Judge Donegan and those acting on his behalf): **Exhibit O** (affidavit) and **Exhibit P** (facsimile without attachments – no response) Also, multiple other Court Watch witnesses and Certified Report of Proceedings.

27. March 23, 2007 (Dr. Mannix by Judge Cleveland-Bernstein):  **Exhibit Q** (press release) Certified Report of proceedings pending completion.

28. April 17, 2007 (Dr. Mannix by Judge Jacobius):  See April 17, 2007 Certified Report of Proceedings pending completion.

29. April 18, 2007 (Dr. Mannix and/or Karyn Mehringer by Judge Hamilton and Judge Jacobius' administrator): Eye witnesses and Certified Report of Proceedings pending completion.

30. May 17, 2007 (Dr. Lundsgaarde by Judge Katz): **Exhibit R** (court order) [Note wrong date. Actually July 17, 2007.]

31. May 17, 2007 (The Lynch Brothers and Dr. Mannix by attorney Michael Braun): **Exhibit S** (transcript of voicemail message)

32. June 28, 2007 (Dr. Mannix by court-appointed attorney David Wessel and Defendant's attorneys Asher and Rissman): Witnesses and Certified Report of Proceedings pending completion for threats of malicious prosecution for false allegations of practicing law without a license.

33. June 28, 2007 (Marie Szczypta and Dr. Mannix by Judge Shields): **Exhibit T** (court order) See certified Report of Proceedings pending completion for direct threat by Judge Shields against me from the bench.

34. July 27, 2007 (Rosemarie Broderick and Dr. Mannix by Judge Brewer and those acting on her behalf): See July 27, 2007 Certified Report of Proceedings. Also a direct threat against me by Cook County Sheriff's Office Sergeant if I exercised First Amendment Right to Association.

35. September 18, 2007 (Dr. Mannix by Judge Brewer): See September 18, 2007 Certified Report of Proceedings.

36. On or about October 1, 2007 (Dr. Mannix by the Illinois Attorney General): On September 19, 2007, I entered into the Illinois Supreme Court Record a document I received from an organized crime family informant indicating possible involvement by Illinois Attorney General Lisa Madigan [**Exhibit U**]. It is my understanding and belief that on or about October 1, 2007, two Assistant Attorney Generals went to IFCAA co-member, Michael Lynch's place of employment and attempted to interrogate him regarding false allegations of my practicing law without a license. Mr. Lynch immediately called his criminal attorney, Thomas Durkin. Subsequently, Mr. Durkin had a meeting with the two AAGs. **During the meeting, my name didn't come up**. All the AAGs wanted was the evidence IFCAA co-members have regarding the organized crime enterprise based in Maricopa County, Arizona and involving the Sucato Family. When Mr. Durkin stated that evidence would only be turned over in exchange for immunity, the meeting ended.

37. October 31, 2007 (Dr. Mannix by court-appointed attorney David Wessel and Defendant's attorneys Asher and Rissman): More direct threats of malicious prosecution against me

by the three men before the bench of Judge Hamilton right after I had made **another** settlement offer in the court hall that in exchange for the freedom of Kevin and Brian I would sign a release of all future civil and criminal prosecutions against the defendant and the only thing court-appointed attorney, Mr. Wessel, was interested in was that he be included in the release.

38. November 13, 2007 (Dr. Mannix by Judge Brewer and those acting on her behalf): **Exhibit V** (fax to authorities without attachments)

39. December 20, 2007 (Rosemarie Broderick and Dr. Mannix by Judge Brewer): Affidavit executed by Ms. Broderick is too afraid to submit it at this time.

40. February 26, 2008 (Dr. Mannix by the Defendant):  **Exhibit W** (maliciously false police report and he threatened Kevin constituting criminal Disorderly Conduct and Harassment of Witnesses by Defendant).

41. Further affiant sayeth naught.

Sheila A. Mannix

SUBSCRIBED and SWORN to before me on
this 14th day of April, 2008.

NOTARY PUBLIC

OFFICIAL SEAL
ELIZABETH S. MILLER
Notary Public – State of Illinois
My Commission Expires  3/10/12

8





**All But My Soul: Abuse Beyond Control** by Jeanne I. King, Ph.D.

"You should view your situation as if you've been dragged into a dark alley and you're being mugged and there is nothing you can do about it."

Court-Appointed Child Attorney David Wessel to the Children's Mothers

Stated to Plaintiff Mannix in her one and only meeting with David Wessel on October 3, 2002. Two independent professionals (an attorney and a therapist) confirmed that he has stated this to their female clients. At the rallies in September 2005 and October 2006, a flyer with written confirmation that Mr. Wessel stated this to Plaintiff Mannix in the form of a copy of a portion of the certified court transcript of August 19, 2005 before Judge Donegan was distributed.



Atty. No. 99500

### IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
### COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION

IN RE: THE FORMER MARRIAGE OF          )
SHEILA MANNIX,                         )
                  Petitioner,    )
                             )    No. 93 D 2984
vs                                     )
                             )
DANIEL SHEETZ,                         )
                  Respondent.    )

### <u>AFFIDAVIT OF KARYN MEHRINGER</u>

      I, your affiant, Karyn Mehringer, being first duly sworn upon oath, depose and state as follows:

      I am thirty-nine (39) years old and of sound mind and body

2    On Friday, October 14, 2005, I attended a court status before Judge Donegan in the above-captioned case for Dr. Sheila Mannix, a pro se non-attorney litigant. Along with Dr. Mannix, I belong to a support group of parents who have been treated unjustly in Domestic Relations Divisions of Circuit Courts in Illinois. We have a Court Watch system in which we witness what occurs in court, provide affidavits, and are available for deposition and testimony.

3    On said day, the behavior of Judge Donegan toward Dr. Mannix was outrageously abusive. I cried after witnessing Dr. Mannix be verbally abused and emotionally battered by Judge Donegan.

4    I witnessed Judge Donegan tell the court reporter to "don't pay attention to her" while Dr. Mannix was attempting to exercise her right to speak as a pro se litigant.

5.    I witnessed Judge Donegan tell Dr. Mannix, "I don't trust you and I don't have to." Judge Donegan also stated "I don't trust your motives. I suspect your motives."

6.    I witnessed Judge Donegan tell Dr. Mannix that she may not quote statutes or appellate case law in her counter argument to Child Representative David Wessel's Motion to Strike and Dismiss Dr. Mannix's Motion for Discharge *Instanter* of Child Representative David J. Wessel and Other Relief.

EX B

7.  I witnessed Dr. Mannix quote a statement of Judge Donegan from a prior court date that I have read from the court proceedings, "We do not get evidence from attorneys, we take evidence from litigants." Then I witnessed Judge Donegan ignore EVERYTHING Dr. Mannix said, even when she said she would only speak under oath, if necessary, in an attempt to get Judge Donegan to believe her. I witnessed Judge Donegan believe everything the attorneys, Mr. Wessel and Mr. Asher, said as if it was gospel. I have witnessed numerous court dates for Dr. Mannix before Judge Donegan and I truly believe that he cannot follow what is going on before him in conjunction with being abusive and prejudiced.

8.  I witnessed Judge Donegan berate Dr. Mannix for calling his assistant to inquire about a court reporter in which Judge Donegan accused Dr. Mannix of engaging in ex parte communication.

9.  I witnessed Judge Donegan accuse Dr. Mannix of "going behind the court's back" for seeking relief in the form of an Order of Protection for herself and her sons in Lake County and threaten to put Dr. Mannix in jail. Dr. Mannix tried to explain that she was instructed to get the Order of Protection in the county in which the abuse occurred by the Assistant State's Attorney in the Domestic Violence Division of the Cook County State's Attorney's office. I witnessed the Cook County Assistant State's Attorney state this to Dr. Mannix on Tuesday, September 27, 2005 as I went with her to their offices on South Michigan Avenue on said day.

10. I witnessed Judge Donegan state that he was going to call the Judge in Lake County and "I know that he'll [the Judge in Lake County] tell me to do what he feels I should do. This is what we Judges do."

11. I witnessed the Child Representative, David Wessel repeatedly accuse Dr. Mannix of harassment. Mr. Wessel falsely accused Dr. Mannix of harassing the children's therapist without evidence to support this allegation. Mr. Wessel stated that he believed that Dr. Mannix's pleadings were "intended to be harassing and intimidating and her pleadings are calculated to harass my duties to the best she can." Moreover, Mr. Wessel stated that he believed that it was a misdemeanor to harass a child representative.

12. Further affiant sayeth naught.

*KARYN MEHRINGER*

SUBSCRIBED and SWORN before me on this 17th day of October, 2005.

*Karen Maziasz*
NOTARY PUBLIC

OFFICIAL SEAL
KAREN L MAZIASZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 06-12-07

EX B

1   STATE OF ILLINOIS        )
                             )   ss:
2   COUNTY OF COOK           )

3

4       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
        COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

5

6   IN RE:   The Marriage of        )
                                    )
    SHEILA MANNIX,                  )
             Petitioner,            )
8                                   )
            and                     )      No. 93 D 2984
9                                   )
    DANIEL SHEETZ,                  )
10           Respondent.            )

11

12

13

14

5

16          REPORT OF PROCEEDINGS had on the 15th

17  day of December, 2005, A.D., before the Honorable

    JAMES G. DONEGAN, one of the Judges of said

    division, at the hour of 10:00 o'clock A.M.

21

                                    **ORIGINAL**

24

APPEARANCES:

      MS. SHEILA MANNIX,
         Appeared pro se;


      LAW OFFICES OF MITCHELL F. ASHER
         (157 North Brockway
         Palatine, Illinois   60067
         (847) 359-8880), by
      MR. STEVEN E. RISSMAN,
         Appeared on behalf of the Respondent.

.P0l

Ex C

THE CLERK:   Mannix and Sheetz.

THE COURT:   Will you please identify
yourselves?

MS. MANNIX:   Your Honor, Sheila Mannix
representing herself.

MR. RISSMAN:   Your Honor, Steven Rissman
from the law offices of Mitchell Asher for Daniel
Sheetz.

MS. MANNIX:   Your Honor, we are here today
on my motion to return custody of the minor
children to me as the residential parent.   I would
like to note a few things for the record.

THE COURT:   I know why you're here.   Hold
on.   I know why you're here.   You filed a petition.
Does he get an opportunity to respond?

MS. MANNIX:   May I please make a statement
for the record?

THE COURT:   No, no, no, no.

Does he get an opportunity to
respond?

MS. MANNIX:   Sir, there are some emergency
matters.

THE COURT:   Excuse me, Miss Mannix.   There
were no emergencies alleged here.   Now you're

1    saying it's an emergency that the children be

2    restored to you but it's not in the document that

3    you submitted to me.

4         MS. MANNIX:    Nor was it on October 31st.

5         THE COURT:    If you want to téll me verbally

6    what the emergency is  --

7         MS. MANNIX:    It's in the document, sir.

8         THE COURT:    What does it say?

9         MS. MANNIX:    It states that the Respondent

10    has changed residency and has embarked on changing

11    the younger child's school despite the fact that on

12    October 31st his attorney on court transcript

13    stated that he would not be changing schools.    On

14    the 31st there was no motion pending.    And you just

15    stated in another case  --

16         THE COURT:    Leave is granted to file your

17    petition.

18              How many days to respond?

19         MR. RISSMAN:    Your Honor, we'd like 28 days

20    to respond.

21         MS. MANNIX:    I object.    You took my

22    children.    You just made statements in this very

23    court about taking evidence from lawyers.    You

24    took evidence from lawyers on the 31st  --

Ex C

1          THE COURT:    The last three times the case

2     was up you weren't here.

3          MS. MANNIX:    As you know I was in the

4     hospital on November 4th.

5          THE COURT:    I don't know that.

6          MS. MANNIX:    It's on court transcript --

7          THE COURT:    We went out of our way to

8     continue this matter twice because you weren't

9     here.

10         MS. MANNIX:    No, sir, you took my children

11    with no pending motion, no hearing and no testimony

12    in violation of the Constitution.

13         THE COURT:    We're going to have you removed

14    from the courtroom if you continue.    I want you to

15    understand we have rules we follow here.    If we

16    don't follow the rules we have chaos.

17         MS. MANNIX:    I object.

18         THE COURT:    You can object all you wish but

19    there are still rules.

20         MS. MANNIX:    You're violating my

21    Constitutional rights and you're violating your own

22    rules of the Court.

23         MR. RISSMAN:  Your Honor, if I may.    Could

24    you instruct Miss Mannix not to yell?    She's

Ex C

causing pain in my ear and we're trying to have a
civil proceeding.   I told her as soon as I came in
that we were asking for time.   Mr. Wessel who is
the child's attorney  --

THE COURT:   Excuse me.   You're entitled to
time.

MS. MANNIX:   Sir, I object.   I object.
You're violating my Constitutional rights.   I was
not given time on numerous occasions.   And I speak
loudly because I have a hearing deficit and I
apologize for that.   I don't have the money to
repair my hearing aid.   You have violated my
Constitutional rights.   You have not given me
time.   You took my children with testimony from
attorneys even though in your own words on July
25th you stated that  --

MR. RISSMAN:   I object to this.

THE COURT:   Twenty-eight days.   We'll set
it for status.

MR. RISSMAN:   There is a continuation date,
your Honor, status date now of January 5th.   Do
you want that to be stricken?

THE COURT:   We'll have to strike that.

MS. MANNIX:   I deny that this Court has

EX C

1    jurisdiction and I will be filing a Federal

2    preliminary interlocutory injunction.  Thank you,

3    your Honor.

4         THE COURT:   I want you to do that.   You

5    should be over in the Federal Court rather than

6    here.

7         MR. RISSMAN:   Miss Mannix, would you like

8    to get the date?

9         THE COURT:   Forget that.   The date will be

10   28 days plus.   So it will be the 16th of January

11   or thereabouts.

12        THE CLERK:   We're not here.

13        THE COURT:   17th.

14                    (WHEREUPON, the case was

15                    passed after which the

16                    following proceedings were

17                    resumed:)

18        THE CLERK:  Mannix.

19        MR. RISSMAN:  Steven Rissman for Daniel

20   Sheetz.

21                    On the next court date, was that

22   supposed to be a status date or a hearing date?

23        THE COURT:  Status.

24        MR. RISSMAN:  Thank you, your Honor.

Ex C

8

1           (WHICH were all the

2           proceedings had in the

3           above-entitled cause at

4           this date and time.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Ex C

1   STATE OF ILLINOIS    )
                       )   SS:

2   COUNTY OF COOK      )

3

4       I, Esther J. Egan, Certified Shorthand

5   Reporter, in and for the State of Illinois, do

6   hereby certify that the foregoing Report of

7   Proceedings was recorded stenographically by me and

8   was reduced to typewriting by me, and that the said

9   Report of Proceedings constitutes a true record of

10   the proceedings which transpired on said date and

11   time.

12       I further certify that I am not a relative

13   or employee or attorney or counsel of any of the

14   parties, or a relative or employee of such attorney

15   or counsel, or financially interested directly or

16   indirectly in this action.

17         IN WITNESS WHEREOF, I have hereunto set

18   my hand at Glenview, Illinois, this 16th day of

19   December, A.D., 2005.

20

21

22                          _Esther J. Egan_

23

24   C.S.R. No. 084-001124

EX C

FROM :K Mehringer MA Forensic Psy          FAX NO. 708 354 3626          May. 20 2007 01:32PM P1

EXHIBIT H

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:              )
                                    )
MARK A. FREEMAN, SR.,               )
                    Petitioner.     )          No. 00 D 12224
                                    )          Consolidated with 00 D 12313
        and                         )
                                    )
                                    )
KARYN L. FREEMAN,                   )
n/k/a KARYN L. MEHRINGER,           )
                    Respondent,     )

## AFFIDAVIT OF SHEILA MANNIX REGARDING THE EVENTS OF DECEMBER 16, 2005 BEFORE JUDGE SHIELDS

I, your affiant, Sheila Mannix, being first duly sworn upon oath, depose and state as follows:

1. My name is Sheila Mannix and I am over the age of eighteen and under no legal disability. I have personal knowledge of the facts stated herein and could testify competently to them if called upon to do so.

2. I observed the events of December 16, 2005 at the Daley Center in the courtroom of Judge Shields.

3. I observed Judge Shields behave in a way that made me question her fitness to serve on the bench. Specifically, she was highly agitated and overly emotional in her body movements and verbal expressions.

4. Further stating, I observed Judge Shields make willful, gross, and verifiable misrepresentations of the truth regarding the lawfulness of Ms. Mehringer's meritorious pleadings and make willful, gross, and verifiable misrepresentations of the truth regarding harassment and abuse by Ms. Mehringer. I found this profoundly disturbing because I have witnessed Judge Shields behave in an abusive and harassing manner toward Ms. Mehringer.

5. I observed Judge Shields make willful, gross, and verifiable misrepresentations of the truth regarding the performance of the Child Representative David Wessel in this case. I witnessed and have first hand knowledge of Mr. Wessel's violation of his fiduciary obligations to his clients, Ms. Mehringer's two minor children, up to and including child endangerment and the unlawful acquisition of the children's assets and Ms. Mehringer's assets as primary caretaker of the children.

Exhibit "14"

Ex D

FROM :K Mehringer MA Forensic Psy    FAX NO. :708 354 3626    May. 20 2007 01:33PM P2



6. I witnessed Judge Shields directly threaten Ms. Mehringer with going to jail if Judge Shields sanctioned her for literally exercising her constitutional rights to full and meaningful access to the court and due process and she could not pay the fines. This was especially horrific to me because I was aware that Judge Shields had impoverished Ms. Mehringer over the course of five (5) years of protracted malicious abuse and use of process orchestrated by Judge Shields herself and for which Judge Shields herself granted Ms. Mehringer indigent status.

7. I witnessed Judge Shields behave like a hostile opposing counsel conducting a vicious cross examination of Ms. Mehringer as she was literally acting like Ms. Mehringer's ex-husband's counsel because he nor any counsel representing him had appeared. Therefore, it is my understanding that the matter should have been dismissed for want of prosecution or a default order should have been entered against Ms. Mehringer's ex-husband. This made me question Judge Shields' impartiality.

8. Further affiant sayeth naught.

*Sheila Mannix*
SHEILA MANNIX

SUBSCRIBED and SWORN before me on
this 12th day of January, 2006.

*Zenaida Cerrillo*
NOTARY PUBLIC

```
"OFFICIAL SEAL"
ZENAIDA CERRILLO
Notary Public, State of Illinois
My Commission Expires May 5, 2009
```

EX D

```
STATE OF ILLINOIS      )
                       )  SS:
COUNTY OF COOK         )
```

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

```
IN RE:  The Marriage of      )
                             )
SHEILA MANNIX,               )
          Petitioner,        )
                             )        No. 93 D 2984
         and                 )
                             )
DANIEL SHEETZ,               )
          Respondent.        )
```

REPORT OF PROCEEDINGS had on the 30th
day of March, 2006, A.D., before the Honorable
JAMES G. DONEGAN, one of the Judges of said
division, at the hour of 11:00 o'clock A.M.

**ORIGINAL**

;AN



APPEARANCES:

      MS. SHEILA MANNIX,
         Appeared pro se;


      LAW OFFICES OF MITCHELL F. ASHER
         (157 North Brockway
         Palatine, Illinois    60067
         (847) 359-8880), by
      MR. MITCHELL F. ASHER,
         Appeared on behalf of the Respondent;


      WESSEL & DOHENY,
         (205 West Randolph Street - Suite 1630
         Chicago, Illinois    60606
         (312) 558-3000), by
      MR. DAVID J. WESSEL,
         Appeared on behalf of the minor
         children;


      Also Present:  Daniel Sheetz.

Ex E

1      MR. WESSEL:    I agree.

2      THE COURT:    We should set all matters on

3  this in the future for eleven o'clock.

4      MR. WESSEL:    This matter was set for

5  eleven, your Honor.

6      THE COURT:    I know, but all the emergency

7  matters were set for 9:30.

8      MR. ASHER:    That's correct.

9      THE COURT:    You might want to put in that

10  order that the emergency matters that were filed

11  and noticed for 9:30 were heard by the Court on its

12  eleven o'clock call so that'll keep the record

13  straight there.

14      MR. ASHER:    These other three that were not

15  heard we're just going to leave them, continue

16  them?

17      THE COURT:    Yeah.    Well, she can file them

18  but they're still part of today's order that says

19  she's going to get leave of Court.    There is a

20  companion case -- there was another case, not a

21  companion case, before Judge Shields, so that's how

22  she's controlling the call and I think she

23  exercised good judgment so I'm going to do the same

24  thing.

EX E

1          MR. ASHER:   Thank you, your Honor.

2          UNIDENTIFIED MALE:   Your Honor, if I

3    may  --

4          THE COURT:   Nobody's talking to you.

5          UNIDENTIFIED MALE:  For the court record my

6    name is --

7                              (WHICH were all the

8                              proceedings had in the

9                              above-entitled cause at

10                             this date and time.)

Ex E

STATE OF ILLINOIS    )
                    ) SS:
COUNTY OF COOK     )

I, Esther J. Egan, Certified Shorthand Reporter, in and for the State of Illinois, do hereby certify that the foregoing Report of Proceedings was recorded stenographically by me and was reduced to typewriting by me, and that the said Report of Proceedings constitutes a true record of the proceedings which transpired on said date and time.

I further certify that I am not a relative or employee or attorney or counsel of any of the parties, or a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I have hereunto set my hand at Glenview, Illinois, this 1st day of April, A.D., 2006.

*Esther J. Egan*

C.S.R. No. 084-001124

EX E

1  STATE OF ILLINOIS
                          SS
2  COUNTY OF C O O K

3

4      IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
       COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

5

6   IN RE THE MARRIAGE OF

    ROBERT SZCZYPTA,

8              Petitioner,          No   99 D 13200

9          and                     Calendar 64

10  MARIE SZCZYPTA,                 Judge Karen Shields

11             Respondent.

2

13         REPORT OF THE PROCEEDINGS had in the

14  above-entitled matter before the Honorable Karen

15  Shields, Judge of said court, at the Richard J.

6   Daley Center, Room 1805, Chicago, Illinois, on the

17  26th day of April, A.D., 2006, commencing at

8   10:48 a.m

9

20

21

23

24

EX F

A P P E A R A N C E S:

    ROBIN & BASS, PC,
    30 North LaSalle Street
    Suite 1210
    Chicago, Illinois  60602
    (312) 782-2400
    BY:  MS. JENNIFER BYRD,

    Appeared on behalf of the Petitioner;


    MS. MARIE SZCZYPTA,

    Appeared Pro Se.

Ex F

down.  You are not a party to anything.  Please, I

2   need you not to keep making noises.  All right?

3          DR. MANNIX:  Your Honor, but the problem

4   is --

5          THE COURT:  Ms. Mannix.

6          DR. MANNIX:  There's law that says that

7   she can confer with members of her organization

8          THE COURT:  Speak one more time

9   Ms. Mannix, and Louie is taking you in the back

10         DR. MANNIX:  Your Honor, there's law that

11  she can confer --

12         THE COURT:  Louie, to the back.

13         DR. MANNIX:  Ma'am, there's law.

14         THE COURT:  Ms. Mannix, to the back.

15         DR. MANNIX:  There's state law she can

16  confer.  I'm sorry, your Honor.  I'm just trying to

17  state the law.  I didn't mean to upset you.

18         THE COURT:  I work as much as I can with

19  you guys.

20         DR. MANNIX:  There is a law that we can

21  confer.  I'm sorry you're breaking the law.

22         MS. SZCZYPTA:  Your Honor

23         THE COURT:  Okay  Ms. Szczypta, what I

24  want to say to you is don't go backwards.  You know

Ex F

1   that there are records you do not want to bring up

2   in here, okay, because there --

3              MS. SZCZYPTA:   Your Honor, there has never

4   been any proof.   There has never been any proof of

5   anything.

6              THE COURT:   Okay.

7              MS. SZCZYPTA:   There's just allegations,

8   your Honor --

9              THE COURT:   All right.

10             MS. SZCZYPTA:   -- that has done tremendous

11  harm to my children and myself.   Your Honor, I was

12  coerced under duress to enter into an agreement,

13  and it was not in the best interest of myself or

14  the children at all.

15             THE COURT:   All right.

16             MS. SZCZYPTA:   I have been discriminated

17  all the time.

18             THE COURT:   We're done with this hearing.

19  There is nothing else pending.

20             Sir, you wanted to say something else.

21  Say it.

22             MR. SZCZYPTA:   I just want to respond to

23  showing up at the religious school.

24             Your Honor, you ordered her not to leave

STATE OF ILLINOIS
                              ) SS.
COUNTY OF COOK

        I, CARYL L. **HARDY, a Certified Shorthand**
Reporter doing business in the County of Cook and
State of Illinois, do hereby certify that I
reported in machine shorthand the proceedings at
the hearing of the above-entitled cause.

        I further certify that the foregoing is a
true and correct transcript of said proceedings as
appears from the stenographic notes so taken and
transcribed by me.




                    _Caryl L. Hardy_

                    CSR No. 084-001990



Subscribed to and sworn to
before me this ____ day
of _____, 2006.

_____
              Notary Public

        OFFICIAL SEAL
        MARK JOHNSEN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12-16-2009



EX F

ORIGINAL

STATE OF ILLINOIS  )
                   )  SS.
COUNTY OF C O O K  )

  IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:
ROBERT W. SZCZYPTA,        )
                          )
         Petitioner,      )
                          )
    and                   )        99-D-13200
                          )
MARIE SZCZYPTA,           )
                          )
         Respondent.      )


          REPORT OF PROCEEDINGS had at the hearing

of the above-entitled matter, before the

HONORABLE KAREN G. SHIELDS, Judge of said Court,

located at the Richard J. Daley Center, Room

2805, Chicago, Illinois, on the 15th day of May,

A.D., 2006, at 11:00 a.m.


Reported for
EUNICE SACHS AND ASSOCIATES, by
Beth M. Young, C.S.R.                    Ex F

A        A'

A P P E A R A N C E S

PRESENT:

    MS. JENNIFER BYRD, of the firm of

        Neil A. Robin & Associates
        30 North LaSalle Street
        Suite 1210
        Chicago, Illinois 60602

        appeared on behalf of the petitioner;

    MS. BOYE AKINWANDE,

        Office of the Public Guardian
        69 West Washington Street
        Suite 700
        Chicago, Illinois 60602

        appeared on behalf of the minor
        children.

A

Ex F

1   it down.  We have to let her take it all down.

2                    Finish your sentences.  And you

3   will be allowed to speak, too.

4       MS. BYRD:  Without alleging another statutory

5   authority, they can't stand.  These are not

6   issues of visitation abuse under 607.1.  It's a

7   very specific statute.  There may be other

8   statutes under which she could bring a petition,

9   but not under 607.1

10      THE COURT:  Okay.

11      MS. SZCZYPTA:  Your Honor, I request a moment

12  to seek assistance from my group members.  Just

13  one second, please.

14      THE COURT:  Okay.  You can walk back there to

15  them.

16                    (A brief pause was had.)

17      MS. SZCZYPTA:  I'm sorry, your Honor.  This

18  is very hard for me.

19      THE COURT:  All right.

20      MS. SZCZYPTA:  The state applies directly,

21  but if I don't know exactly when my child's

22  events are because my ex-husband told the school

23  and the church that I can't get any access.  I

24  have tried to contact them.  I have tried to

        EUNICE SACHS AND ASSOCIATES      708  709-0500

                                    Ex F

1    contact Mr. Neil Robin's office.  Nobody has ever

2    responded to anything.

3                    Then my time to be with my child

4    is interfered all the time.  It is visitation

5    abuse because --

6        THE COURT:  I need you to respond to -- Miss

7    Szczypta.

8        MS. SZCZYPTA:  Yes.

9        THE COURT:  I need you to respond to the

10   motion to strike.  That's the only issue we're

11   dealing with now, not the underlying issues.

12       MS. SZCZYPTA:  Okay.

13       THE COURT:  Okay?

14       MS. SZCZYPTA:  Okay.

15       THE COURT:  Just the motion to strike.

16       MS. SZCZYPTA:  Okay.  For an example, Miss

17   Byrd said that she wanted to have some examples

18   how the visitation abuse is alleged, correct?

19       THE COURT:  No.  Now we are on the one that

20   is relative to Section 607.  And I believe that's

21   in your count three, five and six, if I'm not

22   mistaken.

23       MS. BYRD:  Five and six.

24       MS. SZCZYPTA:  Five and six?

Ex F

1  STATE OF ILLINOIS  )
                      )  SS.
2  COUNTY OF KANKAKEE )

3

4          Beth M. Young, being first duly sworn,

5  on oath, says that she is the court reporter who

6  reported in shorthand the proceedings had at the

7  hearing of said cause, and that the foregoing is

8  a true and correct transcript of her shorthand

9  notes so taken as aforesaid.  So signed and dated

10 this 17th day of May, 2006.

11

12

13          _Beth M Young_____

14          Beth M. Young, C.S.R.
            C.S.R. License # 084-003918

15

16

17

18

19

20

21

22

23

24

Ex F

STATE OF ILLINOIS   )
                    )   SS:
COUNTY OF C O O K    )

☐ ORIGINAL

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION


IN RE: THE FORMER MARRIAGE OF:   )
                                 )
        ROBERT SZCZYPTA,          )
                                 )
           Petitioner,           )   No. 99 D 13200
                                 )
        and                      )
                                 )
        MARIE SZCZYPTA,           )
                                 )
           Respondent.           )

        REPORT OF PROCEEDINGS had in the

above-entitled cause, before the Honorable KAREN G.

SHIELDS, one of the Judges of said Court, on

Wednesday the 7th day of June, A.D., 2006.


PRESENT:

        MS. JENNIFER BYRD,
            Appeared on behalf of the Petitioner;

        MS. MARIE SZCZYPTA,
            Appearing pro se.


REPORTED FOR
EUNICE SACHS AND ASSOCIATES
BY:  Michelle S. Blanks
CSR-084-004123

EXP

1   my motion to strike.

2           THE COURT:  I do not have it.

3           MS. BYRD:  It's attached to my motion to

4   strike as Exhibit A.

5           MS. SZCZYPTA:  Your Honor, I need a

6   minute, please.

11:46A  7           THE COURT:  Sure.

8           MS. BYRD:  For the record, I'm going to

9   object, again, to Ms. Szczypta consulting on her

10  legal strategy with a non-attorney sitting in the

11  back of the room.

12          THE COURT:  I will allow it.  Go ahead.

13  Ms. Szczypta, did you want to argue this?

14          MS. SZCZYPTA:  Your Honor, my response in

15  opposition to the motion to strike portions of

16  respondent's motion for summary judgment is backed up

17  with proof, front to back.  Respondent brought her

18  motion for summary judgment and other relief pursuant

19  to the additional authorities cited in the emergency

20  motion for temporary restraining order, and

21  prohibitory injunction, and other relief which was

22  incorporated herein in reference.

23          I don't feel good.

.:47A  24          THE COURT:  As it relates to the motion to

Ex 17   17

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

DOMESTIC RELATIONS DIVISION


I, MICHELLE S. BLANKS, Certified Shorthand Reporter for the Circuit Court of Cook County, County Department-Domestic Relations Division, do hereby certify that I noteread the stenotype notes, to the best of my ability, of the proceedings had at the hearing of the aforementioned cause; that I thereafter caused the foregoing to be transcribed into typewriting, which I hereby certify to be a true and accurate transcript of the proceedings had before the Honorable KAREN G. SHIELDS, Judge of said Court.


MICHELLE S. BLANKS
Certified Shorthand Reporter
License No. 084-004123

Dated this 27th

day of June, 2006

1

☐ORIGINAL

```
 1    STATE OF ILLINOIS   )
                          )  SS.
 2    COUNTY OF C O O K   )

 3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
               COUNTY DEPARTMENT - CHANCERY DIVISION
 4

 5    MARY CARR D'AGOSTINO and  )
      MARIO D'AGOSTINO,         )
 6                             )
                Plaintiffs,    )
 7                             )
             vs                )     98-CH-11007
 8                             )    (Transferred to
                               )     Law Division)
 9    MICHAEL W. LYNCH, et al., )
                               )
10               Defendants.    )

11

12            REPORT OF PROCEEDINGS had at the hearing

13    of the above-entitled matter, before the

14    HONORABLE ALEXANDER P. WHITE, Judge of said

15    Court, located at the Richard J. Daley Center,

16    Room 2503, Chicago, Illinois, on the 10th day of

17    August, A.D., 2006, at 9:00 a.m.

18

19

20

21

22

23    Reported for
      EUNICE SACHS AND ASSOCIATES, by
24    Beth M. Young, C.S.R.                  ( Ex 2 )

          EUNICE SACHS AND ASSOCIATES    (708) 709-0500
```

2

```
 1
 2                    A P P E A R A N C E S
 3    PRESENT:
 4        MR. MICHAEL A. BRAUN, of the firm of
 5            Law Office of Michael A. Braun
             33 North Dearborn Street
 6           Suite 500
             Chicago, Illinois 60602
 7
             appeared on behalf of the plaintiffs;
 8
      MR. JOHN N. HOURIHANE, JR., of the firm of
 9
             Murphy & Hourihane, LLC
10           77 West Wacker Drive
             Suite 4800
11           Chicago, Illinois 60601

12           appeared on behalf of Eugene E. Murphy,
             Junior;
13
      MS. KERRY A. WALSH, of the firm of
14
             Gregory E. Kulis and Associates, Ltd.
15           30 North LaSalle Street
             Suite 2140
16           Chicago, Illinois 60602

17           appeared on behalf of Kevin Lynch;

18    MR. STEVEN R. SMITH,
      MS. JENA M. VALDETERO, of the firm of
19
             Bryan Cave, LLP
20           161 North Clark Street
             Suite 4300
21           Chicago, Illinois 60601

22           appeared on behalf of Bryan Cave;

23

24
```

EUNICE SACHS AND ASSOCIATES      (708) 709-0500

Ex 9

```
1

2                    A P P E A R A N C E S
                          (continued)
3
     PRESENT:
4
         MR. RAYMOND M. KRAUZE, of the firm of
5
                Michael Best & Friedrich, LLP
6               180 North Stetson Avenue
                Suite 2000
7               Chicago, Illinois 60601

8               appeared on behalf of World Savings
                Bank.
9
                Also present:  Mr. Michael W. Lynch.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Ex g

1       MR. LYNCH:  Not if you haven't disclosed an

2    economic interest.

3       THE COURT:  Just a minute.  Let me finish,

4    okay?  I have no problem with granting your

5    motion for substitution of judge.  I take it,

6    though, there may be some objections to that

7    motion.

8       MR. LYNCH:  Yes, your Honor.  That may be the

9    case.  But I'm notifying the Court.  That's why

10   we have the court reporter here.

11                    We have now new evidence

12   regarding a conflict regarding your economic

13   interest disclosure form that you submitted with

14   the state.

15      THE COURT:  Me?

16      MR. LYNCH:  Yes, sir.  In violation of Rule

7    68.

18      THE COURT:  Run this by me again.  I have

19   filed all economic --

20      MR. LYNCH:  Yes, your Honor.  We have

21   evidence now that yourself, Judge Donegan and

22   Judge Shields are participating in a bribery fund

23   along with Mr. Braun.  We have evidence that

24   you --

EUNICE SACHS AND ASSOCIATES      708) 709-0500

Ex g

1     MR. BRAUN:  Wait a minute.  Let me hear that

2  one again.

3     MR. LYNCH:  Yes.

4     THE COURT:  I want this -- Counsel, I want

5  this on the record.

6     MR. LYNCH:  That's why I brought her.

7     THE COURT:  What have I violated in respect

8  to filing my disclosure?  I've been doing it

9  every year for 20 years.  You tell me.

10    MR. LYNCH:  You haven't disclosed the monies

11  that come from the bribery fund that you are

12  funding through White -- Five Whites LC through

13  Arizona.

14    THE COURT:  Are you talking about the Price

15  case?

16    MR. LYNCH:  No, this is not the case.  The

17  Price case is separate.  That's in Kansas, your

18  Honor.  This is a separate case.  This has to do

19  with the monies that you, Judge Shields and Judge

20  Donegan have been hiding with Mr. Braun through

21  the bribery fund.  We have full evidence of that.

22  We disclosed it to the FBI.  We're actually

23  meeting with the District Attorney's Office this

24  afternoon.  We're going to be sitting down with

EUNICE SACHS AND ASSOCIATES       708  709-0500

Ex g

```
 1    STATE OF ILLINOIS  )
                            SS
 2    COUNTY OF KANKAKEE

 3

 4             Beth M. Young, being first duly sworn,

 5    on oath, says that she is the court reporter

 6    reported in shorthand the proceedings had at

 7    hearing of said cause, and that the foregoing is

 8    a true and correct transcript of her shorthand

 9    notes so taken as aforesaid   So signed and dated

10    this 21st day of August, 2006.

11

12

13                     Beth M. Young, C.S.R.
                       C.S.R. License # 084-003918
14

15

16

17

18

19

20

21

22

23

24
```

EUNICE SACHS AND ASSOCIATES      708)  709-0500

# Intelligence Bulletin

| Date: 8/17/2006 | Case #: 06-108476 | Author ID: 952 |
|---|---|---|

  

| MEHRINGER, Karyn L. DOB: 25Jul66 | MANNIX, Sheila A. DOB: 14Sep60 | SZCZYPTA, Marie DOB: 25Mar70 |
|---|---|---|

The above subjects are being investigated for Threatening a Public Official (Judge Karen G. SHIELDS of the Richard J. Daley Center-Room #2805). Subjects MEHRINGER and MANNIX have been observed in restricted areas behind Judge SHIELDS's courtroom. MEHRINGER and MANNIX have been informed not to return to any restricted areas of the facility. If above subjects are observed in restricted areas of the Daley Center, please detain and contact the CCSPD Investigations Section at 708-865-4896.

Attention: Do not search, detain, or arrest these individuals based upon this bulletin for any other reason except for trespassing in restricted areas of the Daley Center.

Subject MEHRINGER's address: 9800 Joliet Road Countryside, IL 60525
Subject MANNIX's address: 1118 RFD Long Grove, IL 60047
Subject SZCZYPTA's address: 1734 Geneva Drive Wheeling, IL 60090

If any person has additional information or make contact with these subjects please notify Detective J. MORAN #952 or Detective S. MOODY #951 (CCSPD Investigations Section-Judicial Threat Assessment Unit).

## Cook County Sheriff's Police Department
## Investigations Section (708) 865-4896

EXHIBIT NO. T

Ex H

FROM :K Mehringer MA Forensic Psy        FAX NO. :708 354 3626        Apr. 07 2008 04:47PM P2

---

## AFFIDAVIT OF KARYN L. MEHRINGER

---

I, your affiant, Karyn L. Mehringer, being first duly sworn, on oath, states as follows:

1. I am of legal age and competent. This affidavit is made on my personal knowledge of all matters set forth herein. If sworn and called as a witness in a proceeding, I could, and I would, testify competently as to each fact stated in this affidavit.

2. Under penalties of perjury as provided by law, I certify that the statements set forth in this and the attached incorporated document are true and correct, except as to such matters herein and therein stated to be on information and belief and as to such matters, I certify aforesaid that I verily believe the same to be true.

3. I certify that the attached document is a true and correct copy of an authentic document, specifically, the statement I prepared on August 23, 2006, which I attached to my complaint and request for investigation submitted to the Cook County Sheriff's Office Division of Internal Affairs.

4. I certify that the attached document accurately details the events on the evening of August 17, 2006 at my home.

5. I am of information and belief that the events detailed in the attached document evidence acts by Associate Judge Karen G. Shields and those acting on her behalf which meet the elements of violations of the Illinois Criminal Code of 1961, Section 32-4a: Harassment of a witness, 18 U.S.C. § 1512: Tampering with a witness, victim, or an informant, and 18 U.S.C. § 1513: Retaliating against a witness, victim, or an informant of verified public corruption.

6. Further affiant sayeth naught.

_Karyn L. Mehringer_
KARYN L. MEHRINGER

SUBSCRIBED and SWORN to before me on
this 7th day of April, 2008.

_Karen L Maziasz_
NOTARY PUBLIC

```
OFFICIAL SEAL
KAREN L MAZIASZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/12/11
```

Ex I

Wednesday, August 23, 2006

Statement of Events of Thursday, August 17, 2006:

At around 6:30 pm. two officers showed up at my home. I opened the door and asked if I was being arrested. I was told that I wasn't so I went outside to talk to the officers. Officer Moran introduced himself and showed me his identification card. I never saw Officer Moody's ID nor did he introduce himself to me. Officer Moran (badge # 952) told me that he was sent out to "warn" me that a complaint had been made about me stating that I had been seen walking in restricted areas of the Daley Center. I asked Officer Moran when this took place and I was told "in the past." I asked Officer Moran if he had any evidence to support his allegation in which he stated that he was only here at my home to warn me and that he was not at my home to harass me. I stated that his presence at my home is harassment. I asked him if he had a report number in which Officer Moran stated that he did not have the report number with him. Shortly after this, my 15 ½ year old son came outside and handed me my cell phone. A private investigator secured by our organization IFCAA called to ask if everything was OK. I then handed the cell phone over to Officer Moran who then spoke the PI. The PI was asking Officer Moran what was wrong. Officer Moran stated to PI that I was seen walking around restricted areas of the Daley Center. The PI asked Officer Moran when this took place and Officer Moran state that I was seen walking around the Daley Center in restricted areas that day (Thursday). PI asked Officer Moran at what time and place did this occur. Officer Moran stated that I was seen earlier that day but did not give a time. PI informed Officer Moran that he had been with me while I was at the Daley Center on Thursday and pressed for a time. Officer Moran handed me my cell phone back and told me that he lost the call. PI tried to call back several times but Officer Moran told me not to answer his calls, stating "don't answer his call. You can talk to him after we leave. You can talk to him two, three or all night long after we leave." I then told Officer Moran that I believed that the only reason he was at my home was because I had court that morning in front of Judge Karen G. Shields. I stated to Officer Moran that I had filed a pleading with documents attached that support that Judge Shields is involved in illegal activities. I then showed the officers the pleading that I had motioned up for that day. Officer Moran looked over the documents, which included a press release and the 5 pages of material evidence supporting my allegation that Judge Shields is involved in racketeering enterprise across state lines. Officer Moran made a comment to me asking me if a Mannix (he didn't pronounce her name correctly) was also a part of the organization. I stated that she was. I asked the officers if they were done or had anything more to say in which Officer Moran stated "you know what you are doing could be interpreted as a threat to the judge." He then asked me if what I was doing was personal to the judge or the legal system. I just stated that all I have been asking for over a year was to have my case transferred out of the Daley Center to the Bridgeview Court House. Officer Moran stated "isn't that a criminal court house?" I stated that there is one judge in domestic relations there by the name of Judge Riley. I stated that Judge Shields will not transfer my case out. Officer Moran stated to me that if I have evidence of a judge engaged in illegal activities then I should report her to the Crime Commission. I stated to Officer

OFFICE OF THE INSPECTOR GENERAL

"Exhibit I"

Moran that I have tried exercising all legal remedies available to me and my organization. He stated again to me that what I am doing could be construed as a threat to the judge. I stated to Officer Moran that the judge is the one making threats to me and no one is doing anything about that. I asked for their badge numbers and where they were from again so that I could document the events of the evening. Officer Moran would not give me his first name but stated that his badge number is 952 and that Officer Moody's badge number is 951 and that they were from the Cook County Sheriff's Police Department. I also then took down the plate number of the unmarked silver Ford of Officer Moran 315 9300. Officer Moody then rolled down his window and stated "I noticed you taking down Officer Moran's plate number so I will just give you mine. LMK 821."

Sincerely,

Karyn Mehringer
(708) 323-6040

2006 AUG 24 P 1: 31

OFFICE OF THE
INSPECTOR GENERAL

"Exhibit I"

AL AIRTIME, LONG DISTANCE and INTERNATIONAL CHA

Customer Service Number 1-800-887-8867

Sep 08 2006

Statement For: KARYN L. MEHRINGER
Mobile Number: (708) 233-0040
Account Number:

Page 10 of 2

Richard L. Grove
NISA President & CEO

18855 S. Oak Park Avenue
Tinley Park, IL 60477
708.429.1122 • Fax 708.429.1182
Cell 708.606.5888

Email: RickGrove@NISATeam.com
(NISA)690-5010

INVESTIGATIONS    PROTECTION SERVICES
SECURITY SERVICES    TRAINING

Customer Service Number 1-800-887-8867

Sep 08 2006

Statement For: KARYN L. MEHRINGER
Mobile Number: (708) 233-0040
Account Number:

Page 11 of 2

Ex # I

FROM :K Mehringer MA Forensic Pc     FAX NO. :708 354 3626     Jun. 12 2007 09:48PM  P2

**·T··Mobile·**

Customer Service Number 1-800-937-8997

Statement For: KARYN L. MEHRINGER
Mobile Number: (708) 682-6040
Account Number:

LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|------|------|------|------|------|------|------|------|------|

Richard L. Grove
NBA President & CEO
Three Park Ave
16666 S. Oak Park Avenue
Tinley Park, IL 60477
708.468.1182 • Fax: 708.468.1182
Cell: 708.903.0006
Email: RichGrove@NBATeam.com

Ex # I

SEP-6-2006  07:34A FROM:                              T  128614666      P:1/2

# Sheila A. Mannix, PhD
## *Clinical Psychologist*
### 1118 RFD/Robert Parker Coffin Rd.
### Long Grove, Illinois 60047
### Cell (847) 971-6679 Fax (847) 821-8275

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

## FACSIMILE COVER SHEET

TO:      Enrico Mirabelli                         312-861-4666

FROM:    Sheila Mannix

DATE:    September 6, 2006

RE: Letter to Judge Shields


NUMBER OF PAGES (INCLUDING COVER SHEET): Two (2) PAGES


IF YOU DO NOT RECEIVE ALL PAGES, PLEASE NOTIFY SENDER AS SOON
AS POSSIBLE.

*Thank you!*

*Enrico J Mirabelli*

Ex J

SEP-8-2006 FRI  09:42AM ID:                                    PAGE:1

**Sheila A. Mannix, PhD**
*Clinical Psychologist - Neuroscientist - Educator*
1118 RFD/Robert Parker Coffin Rd.
Long Grove, Illinois 60047
(847) 971-6679

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

September 5, 2006

The Honorable Karen G. Shields
Associate Judge, Domestic Relations Division
Circuit Court of Cook County
2805 Richard J. Daley Center
50 W. Washington Street
Chicago, Illinois 60602

Dear Judge Shields,

This morning I had the pleasure of meeting your old partner, Enrico Mirabelli, at the firm. He had received the three national press releases that the organization I co-founded, Illinois Family Court Accountability Advocates, had released on June 19, August 18, and August 23, 2006. He stated that there exists an inaccurate statement in the press release of August 18, 2006, namely, he stated that you are not the daughter of past Cook County Judge David Shields.

I deeply apologize if this is an inaccurate statement. As I believe you know or should know by now, I have a dual track PhD in clinical psychology and neuroscience. My professional training is as a scientist-practitioner such that I have developed the abilities of a research scientist's acute focus on the observation and recording of facts. I hold myself to the highest standards in this regard. With considerable due diligence given the subject matter, I obtained confirmation of the statement in question from three sources which are considered credible resources before including the statement in the public announcement distributed nationally.

However, human error exists despite the best of intentions to make only accurate statements after due diligence. I would greatly appreciate the opportunity to correct the statement in another national press release if it is in fact inaccurate.

Please inform me if the statement that you are the daughter of past Cook County Judge David Shields is an accurate statement or an inaccurate statement. Please provide some verification of your answer. If it is the latter, I will correct the inadvertent mistake in a subsequent national press release straightaway.

Respectfully submitted,

Copy

Sheila A. Mannix, PhD.

CC:    Enrico Mirabelli
       Ronald A. Rascia

EX J

**Sheila A. Mannix, PhD**
*Clinical Psychologist - Neuroscientist - Educator*
**1118 RFD/Robert Parker Coffin Rd.**
**Long Grove, Illinois 60047**
**(847) 971-6679**

'■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**October 17, 2006**

**VIA HAND DELIVERY**

The Honorable Timothy Evans
Chief Judge, Circuit Court of Cook County
2600 Richard J. Daley Center
50 W. Washington Street
Chicago, Illinois 60602

**RE: ALLEGED CRIMINAL ACTS BY JUDGE KAREN G. SHIELDS and ACTS
IN VIOLATION OF CONSTITUTIONAL RIGHTS OF ASSOCIATION on
October 16, 2006**

Dear Judge Evans,

Yesterday, in a deposition of Marie Szczypta, I am of information and belief that
Associate Judge Karen G. Shields engaged in alleged criminal acts under the color of law
and acts in violation of constitutional rights of association against Ms. Szczypta and
myself. I am of information and belief that these alleged acts are scheduled to continue
today at 2:00 p.m. in Courtroom 2805 at the Daley Center. Please be advised that Judge
Shields threatened Ms. Szczypta with false incarceration.

As you are aware or should be aware, Judge Shields held me in unlawful detention for
approximately one hour on April 26, 2006. [See letter submitted to you on May 24, 2006]
Likewise, please be advised that on September 26, 2006, on court record, Judge Shields
falsely threatened me with practicing law without a license after Ms. Szczypta lawfully
sought my assistance as a competent, non-attorney co-member of our organization,
Illinois Family Court Accountability Advocates.

Sir, myself and Ms. Szczypta are simply moms who have educated ourselves about the
law and our rights and are lawfully fighting for our legal rights and the rights of our
children in the Circuit Court of Cook County for which you are the Chief Judge. I am of
information and belief that it is illegal to punish citizens who are lawfully pursuing their
legal rights and constitutional rights under the color of law. I am also of information and
belief that there is no judicial immunity for criminal acts or conspiracy to commit
criminal acts.

Ex K

I have alerted the federal civil and criminal authorities with whom Ms. Szczypta and myself have been cooperating pursuant to our civil and moral duties as citizens of the United States.

Please be advised that as soon as I obtain a copy of the transcript, Ms. Szczypta and myself are planning to file a federal temporary restraining order and injunction against Judge Shields in her official capacity and as an individual.

Respectfully Submitted,

Sheila A. Mannix, PhD

CC:    Domestic Relations Presiding Judge Jacobius – hand delivery
       US Attorney Fitzgerald - facsimile
       FBI Chicago Director Grant - facsimile
       Executive Assistant Attorney General Green - facsimile

Ex K

## AFFIDAVIT OF SHEILA A. MANNIX REGARDING THE BEHAVIOR OF

## JUDGE ALEXENDER P. WHITE ON DECEMBER 20, 2006

I, Sheila A. Mannix, being first duly sworn, on oath, states as follows:

1. I am of legal age and competent. This affidavit is made on my personal knowledge of all matters set forth herein. If sworn and called as a witness in this matter, I could, and I would, testify competently as to each fact set forth herein.

2. On Wednesday, December 20, 2006, after I filed my appellant's brief in Case No. 06-2120, et al., at the United States Court of Appeals for the Seventh Circuit on the 27th floor in the Dirksen Federal Building and after I then personally served Assistant Attorney General Evan Siegel of the Attorney General's Office, Civil Appeals Division, on the 12th floor of the Thompson State Building, I went to the Circuit Court of Cook County at the Richard J. Daley Center, 50 W. Washington St. to research several cases of co-members of the organization I co-founded, Illinois Family Court Accountability Advocates (IFCAA), as well as continue my research on sociopathic behaviors in illegitimate authority.[1]

3. After looking up several cases' electronic dockets on a computer in Room 801 (because they have chairs there as opposed to Rm. 802), I went to the courtroom of Judge Alexander P. White, Courtroom 2503, to look for the record of Case No. 98 Ch 11007 that I had previously been told by Herb in the 12th floor file room was probably in Judge White's chambers.

4. The courtroom door was open and the courtroom was empty. I opened the door to the back hall but did not step over the threshold because I am of information and belief that a standing order exists that people like myself are not allowed in this area of the courthouse without permission. I stated two times, "Hello, Is anyone here?" Judge White's secretary came around the corner from the main back hallway to the short secondary hallway that accesses Judge White's courtroom

---

[1] I am an Illinois-licensed Clinical Psychologist. I completed my undergraduate work at Stanford University. I completed a dual-track PhD in Clinical Psychology and Neuroscience at the University of Illinois at Chicago. I was trained in a scientist-practitioner model and completed my clinical coursework at the Circle Campus and my neuroscience research at the Department of Physiology and Biophysics at the Medical School Campus. I completed my Clinical Internship at the VA Medical Center in North Chicago. I am researching sociopathic behaviors in illegitimate authority as detailed in my trademarked curriculum per same found at www.gyropower.com, click on the 'Tools for 2k' link.

Ex L

and asked if I was looking for Judge White. I said that I was looking for his clerk and a record that I was told was probably in his chambers.

5. She told me to come and I followed her around the corner into the main back hallway. It was at this time that I saw Judge White two to three chambers down the main back hallway. He saw me, recognized me, and immediately and quickly began coming at me down the hallway.

6. I do not specifically recall if I had already followed the secretary into Judge White's chambers or if I was still in the hallway when Judge White began questioning me in an aggressive and belligerent manner. He quickly digressed into yelling at me and threatening me with false incarceration and false litigation. He closed the door of his chambers behind me.

7. While Judge White was yelling at me and threatening me, I felt that I was in the presence of a man who was out of control and I felt in physical danger. Being a psychologist and also a victim of domestic violence with self-defense training, I have professional and personal experience of how to best attempt to keep myself physically safe in a situation like this. I spoke in a calm, soft, secure voice and repeated to Judge White that what was happening was inappropriate and should stop now.

8. Judge White's secretary buried her head in a file cabinet drawer and pretended that nothing was happening. At one point, I asked for her help, but she ignored me.

9. Judge White initially interrogated me with questions including but not limited to asking me why was I there, what case's record was I looking for, and was I a party to the case.

10. I responded with answers that included but were not limited to that I was looking for the record of a case that I was told by the file room clerk was probably in his chambers, that the case number was 98 CH 11007, the D'Agostino v. Lynch case, that I was not a party to the case, that I was a co-member of a non-profit organization with Mr. Lynch, that I was looking for public documents, namely, the order of December 6, 2006 and any motions filed on that day, that I was researching public records in the Circuit Court of Cook County for the research I am conducting.

11. Judge White quickly escalated into a state of being verbally out of control as I answered his questions. He appeared to be on the verge of losing control physically. His face became flushed, he became highly agitated, and his gestures and body movements became erratic. Several times he moved toward me in a physically threatening and intimidating manner as he was verbally threatening me with false incarceration and false litigation and then he would back off. I believe he did not know how to handle the fact that I was not intimidated by his repeated

2

E x L

threats when I remained calm and repeated the aforementioned phrase in paragraph seven (7) above in response to his repeated threats, specifically, that what was happening was inappropriate and should stop now.

12. The following statements are what I recall Judge White yelled at me multiple times each with increasing viciousness:

    a. You're researching for Lynch.
    b. You're not doing any research. You're just researching for Lynch.
    c. I've seen you in the back of the courtroom scribbling your notes for Lynch.
    d. I am going to sue you for defamation of character.
    e. I am going to sue you for defamation of character with Lynch.
    f. Lynch was ordered to sixty days in jail. (repeated many, many times)
    g. I am going to call the sheriff right now and have you arrested.
    h. I am going to call the sheriff right now and have you arrested, too.

13. I did the best I could to stay calm and not react to a man out of control, especially a man who is a judge, but it was difficult. I did state at one point that it would be okay if he sued me because full discovery and an evidentiary hearing would be a good thing. I also stated, "Are you threatening me?" And Judge White responded, "Yes, I am threatening you. You better believe I am."

14. I felt trapped. I felt a significant amount of emotional distress and psychological stress. I felt that I could not leave because I was afraid he would send the sheriff after me with retaliatory false charges and/or allegations which has been done to me, other co-members of IFCAA, and our family members (including our children), e.g., by Judges White, Donegan, Shields, and McNamara, and which had been done by court-appointed child lawyers, e.g., by David Wessel and Ralla Klepak, since we have taken on the apparent corruption in the Chicago court system.

15. I felt that I had to stand up to his abuse and not look intimidated until he ran out of energy which is what I knew (and prayed) would happen with a man of his advanced age with his type of personality-behavioral profile, if he didn't act out his repeated verbal threats to call the sheriff and have me arrested and/or lose physical control and physically attack me.

16. Finally, Judge White did run out of energy and said that he was not going to talk to me anymore and abruptly went into his office. I said that I would follow up with the clerk and return with him and the sheriff as I quickly exited Judge White's chambers and went straight to the clerk.

10. I did not go to the sheriff to report the incident because I knew they would not help me from my multiple past experiences with them and with other co-members of IFCAA. In fact, I knew that it would probably backfire on me because they

3

Ex L

would side with Judge White and whatever false allegations he might make against me – mostly likely backed up by his secretary. I prayed for strength and guidance while on the elevator on my way to the clerk.

11. The clerk, Herb, looked at his book, said he could not locate the record, said he did not know where it was, and stated that since he had told me that the record was probably in Judge White's chambers that he thought a woman might have it but he did not know her name. Herb accompanied me to Rm. 801 and attempted to have me speak with Pat Kelly the file manager of the Law Division. Mr. Kelly was not in but was due the following morning. It was left that I would follow up with Mr. Kelly on Thursday, December 21, 2006, which I did. Mr. Kelly had no idea where the file was either to Judge White's clerk because he felt the file might be in Judge White's chambers. Both Herb and Mr. Kelly behaved in a highly professional and conscientious manner, which I greatly appreciated.

12. On Friday, December 22, 2006, I returned to Courtroom 2503 very early in the morning to see if I could catch Judge White's clerk before court was in session. I did. The female clerk was very helpful after we figured out exactly what I was inquiring about. She did not know where the file was, but she looked up the date I was inquiring about, 12/6/06, on the computer. She clarified that no order or motions where filed on that day and that the matter had been stricken from the call because no one showed up. She agreed that, procedurally, the matter continued to that day would need to be re-noticed up to be heard.

**13. Further affiant sayeth naught.**

Sheila A. Mannix

SUBSCRIBED and SWORN before me on

this 06ᵀʰ day of January, 2007.

NOTARY PUBLIC

Official Seal
James Weintz
Notary Public State of Illinois
My Commission Expires 07/27/2010

4

EX L

## AFFIDAVIT OF MARIE SZCZYPTA REGARDING THE EVENTS OF

## FEBRUARY 2, 2007

I, Marie Szczypta, being first duly sworn, on oath, states as follows:

1.  I am of legal age and competent.  This affidavit is made on my personal

    knowledge of all matters set forth herein.  If sworn and called as a witness in this

    case, I could, and I would, testify competently as to each fact set forth and

    incorporated herein.

2.  On February 2, 2007, I attended a court hearing for Dr. Sheila Mannix at the

    Richard J. Daley Center, 50 W. Washington Street, Chicago, Illinois, in the

    courtroom of recently deceased Associate Judge James G. Donegan, courtroom

    number 1506, at 11:00 a.m.

3.  On said day in said courtroom 1506, I witnessed the following:

    a.  I witnessed Attorney David Wessel go up to Cook County Sheriff's

        Deputy Eric Gross and point out the three male Court Watchers who were

        in the courtroom quietly witnessing the proceedings for Dr. Mannix with

        me.

    b.  I witnessed Dr. Mannix taken out of the courtroom by two deputies when

        she was making objections to the proceedings.  I witnessed Mr. Jaime

        Hernandez, one of the three male Court Watchers pointed out by Mr.

        Wessel, quietly get up and follow Dr. Mannix and the deputies out of the

        courtroom.

1

Ex B M

c. Then I heard a commotion in the court hall outside courtroom 1506. I quietly got up with the other two male Court Watchers and went into the court hall outside courtroom 1506.

d. witnessed multiple deputies holding Mr. Hernandez on different parts of his body and there were multiple other deputies in the court hall.

e. Then a deputy came right up to me and said I have to leave the building or I would be arrested, too.

f. I was taken down the elevator and taken to an exit of the Daley Center. When I told the male deputy that I needed to go to the law library on the 29th floor and I needed to see Judge Shields about my court file in courtroom 2805, he banged the full front of his body against the full front of my body and again threatened me that I would be arrested if I did not leave. I feared for my physical safety and liberty. His actions caused me significant emotional distress and psychological stress.

g. I immediately left the building.

4. Further affiant sayeth naught.

_____
MARIE SZCZYPTA

SUBSCRIBED and SWORN before me on this 15th day of June, 2007.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
LAUREN ELIZABETH TURNER
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 06/02/2008

2

Ex A M

## AFFIDAVIT OF SHEILA MANNIX REGARDING THE EVENTS OF

## FEBRUARY 2, 2007

I, Sheila Mannix, being first duly sworn, on oath, states as follows:

1. I am of legal age and competent. This affidavit is made on my personal knowledge of all matters set forth herein. If sworn and called as a witness in this case, I could, and I would, testify competently as to each fact set forth herein.

2. On February 2, 2007, Mr. Jaime Hernandez attended my court hearing as a Court Watcher at the Richard J. Daley Center, 50 W. Washington Street, Chicago, Illinois, in the courtroom of recently deceased Associate Judge James G. Donegan, courtroom number 1506, at 11:00 a.m. There were also two other men and one woman who were court watching for me as well as a reporter from the SunTimes in attendance.

3. On said day in said courtroom, I witnessed the following:

    a. When I was making lawful objections to the proceedings, I was ordered to be removed from the courtroom by Judge Donegan. Two deputies, one was Deputy Eric Gross and the other was a woman, had me on either side and headed me out the courtroom.

    b. Just before we passed over the threshold of the courtroom doors, Deputy Gross turned his head to the communicator on his shoulder and said into it that there were three males disrupting the courtroom.

EXB N

c.  I was taken aback by Deputy Gross' blatant lie and I immediately stated out loud that he had just lied. As soon as we were in the court hall, multiple deputies came out of the woodwork and surrounded Mr. Hernandez, who apparently had quietly followed the two deputies and me out of the courtroom. I never heard him or saw him until he was surrounded.

d.  Mr. Hernandez was told he had to leave the courthouse. He simply questioned why. Multiple deputies immediately grabbed him on different parts of his body including his neck.

e.   was horrified at what I was witnessing. I kept repeating, multiple times, in a loud voice that Deputy Gross had lied, i.e., "Deputy Gross lied. Deputy Gross lied." I knew what I was witnessing was unlawful because I knew that the only reason why so many deputies would be waiting on the 15th Floor to be able to immediately appear just seconds after Deputy Gross lied on this radio that there was disruption in the courtroom was because someone had intentionally set up the false arrest of one or more of my Court Watchers.

f.  I witnessed the other three Court Watchers quietly come out of the courtroom and immediately multiple deputies confronted my other Court Watchers and told them they had to leave for no just cause, too.

g.  I witnessed the SunTimes reporter quietly exit the courtroom shortly after the three other Court Watchers and go to the water foundation and take a

2

EX B N

drink. The deputies did not recognize him as one of my Court Watchers so he was not accosted.

h.    witnessed Mr. Hernandez taken down a back elevator by multiple deputies. I witnessed my other Court Watchers escorted down the court hall toward the regular elevators.

i.    Throughout the whole time the events transpired in the court hall, I kept repeating out loud that Deputy Gross had lied.

4    Immediately after my proceedings before Judge Donegan were over, I went down to the lock-up in the basement of the Daley Center to inquire after Mr. Hernandez and was told that Mr. Hernandez was taken to 26th and California.

5.    Further affiant sayeth naught.

SHEILA MANNIX

SUBSCRIBED and SWORN before me on this 16th day of June, 2007.

NOTARY PUBLIC

> OFFICIAL SEAL
> LINDA WARGO
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES 7-22-2007

3

Ex B N



# AFFIDAVIT OF DEBB DURBIN OF EVENTS ON FEBRUARY 23, 2007 IN THE

## COURTROOM OF JUDGE DONEGAN REGARDING COOK COUNTY

### SHERIFF'S DEPUTY CARROLL, BADGE # 5102

I, Debb Durbin, being first duly sworn, on oath, states as follows:

1. I am of legal age and am competent. This affidavit is made on my personal knowledge of all matters set forth herein. If sworn and called as a witness in this case, I could, and I would, testify competently as to each fact set forth herein.

2. On February 23, 2007, I was asked to Court Watch at the proceedings of Dr. Sheila Mannix before the late Judge James G. Donegan in Courtroom 1506 at the Richard J. Daley Center, 50 W. Washington St, Chicago Illinois, which was scheduled to commence at 11:00 a.m.

3. Before the proceedings, Dr. Mannix and I went to the lower level of the Daley Center to inform Assistant Chief Cartrette (#100) that a number of Court Watchers would be exercising their civil and constitutional rights to witness the public proceedings in Courtroom 1506 for Dr. Mannix.

4. When I entered courtroom 1506 with several other Court Watchers, Deputy Carroll (35102) approached the first male Court Watcher who entered the courtroom and stated to him that he was not allowed in the courtroom. She told him that he would have to leave because "this is going to be a private proceeding."

5. As the male Court Watcher was turning to leave, I stepped forward, calmly and confidently, and stated, "Excuse me, please, we just came from the lower level office of the Chief and we informed him that there will be several court watchers in this courtroom today witnessing the Mannix hearing; That this will not be a private proceeding; That this will be a public proceeding and we have permission to be here." There were at least four other Court Watchers who witnessed my assertion to Deputy Carroll.

6. I believe that my confidence in my presentation of our constitutional and civil rights to witness a public proceeding resulted in Deputy Carroll's face turning beet red. She did not say another word and immediately exited the courtroom out the door behind the judge's bench. She did not return to the courtroom again, but we all noticed her peeking out of the door through which she had exited, several times during the proceedings.

7. During the proceedings of February 23, 2007, I witnessed the late Judge Donegan and the opposing counselors, repeatedly and aggressively interrupt Dr. Mannix. In fact,

EXO



she never even got to present her opening statement. Whenever Dr. Mannix cited the law, or attempted to exercise her First and Fourteenth Amendment rights to present her legal arguments in support of her position as the pro se petitioner in the matter before the court, and/or whenever she lawfully objected, Dr. Mannix was removed from the courtroom by deputies. This occurred multiple times.

8.  In her absence from the courtroom, Judge Donegan conducted a "Hearing" with but one side being heard. There was no due process of law witnessed during this "Hearing." It seemed a gross violation of the exercise of law, as we know it.

9.  Along with at least five Court Watchers and multiple other witnesses that day, I witnessed Dr. Mannix behave professionally throughout the proceedings and to peacefully exit the courtroom without incident every time she was ordered by Judge Donegan to be removed by the deputies.

10. Later we discussed Deputy Carroll's unprofessional behavior and concluded that it was unlawful and perhaps even an intentional attempt to provoke another false arrest as that which happened to Dr. Mannix's Court Watcher, Jamie Hernandez, on February 2, 2007.

11. The ultimate ruling was a two-year Order of Protection against a mother who has been attempting to protect her children from a court-documented perpetrator of domestic violence.

12. I have been informed that Dr. Mannix's constitutional right to a re-Hearing was denied on June 19, 2007. I know of nothing more fraudulent!

13. Further affiant sayeth naught.

**DEBB DURBIN**

SUBSCRIBED and SWORN to before me on this __5__ day of July, 2007.

NOTARY PUBLIC

"OFFICIAL SEAL"
Dorothy J. Cronin
Notary Public, State of Illinois
Kane County
My Commission Expires April 6, 2009

E< O

### Sheila A. Mannix, PhD
*Clinical Psychologist-Neuroscientist-Educator*
**1118 RFD/Robert Parker Coffin Rd.**
**Long Grove, Illinois 60047**
**Cell (847) 971-6679**

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

## FACSIMILE COVER SHEET

TO:     Sergeant. Anton and Detective Moran    708-865-6155
           Cook County State's Attorney Devine     312-603-4708
           Illinois Attorney General Madigan       217-785-2551
           Scott Turow, Executive Ethics Commission  312-876-7934

FROM:   Sheila Mannix

DATE:    February 27, 2007

RE: **MEMO TO COOK COUNTY SHERIFF'S POLICE DETECTIVES**

NUMBER OF PAGES (INCLUDING COVER SHEET): SIXTEEN (16) PAGES

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE NOTIFY SENDER AS SOON AS POSSIBLE.

Ex P

Date:   Tuesday, February 27, 2007
To:     Sergeant Michael Anton, Supervisor (708) 865-4896
        Detective Jason Moran
        Cook County Sheriff's Police
CC:     Attorney General Madigan
        Cook County State's Attorney Devine
        Executive Ethics Commission Member Turow
From:   Sheila A. Mannix, PhD, as an individual and as co-founder of Illinois Family
        Court Accountability Advocates (IFCAA)

Re:

>   February 2, 2007 Arrest of Mr. Jaime Hernandez, a Court Watcher at the Court
    Proceedings of Dr. Sheila Mannix's Case No. 93 D 2984 before Judge James G.
    Donegan in Courtroom 1506, Daley Center, Chicago, Illinois; and

>   Alleged Criminal Acts by State Court Agents involved in Family Court Cases at
    the Daley Center, including Deputies of the Cook County Sheriff

Dear Sirs:

Thank you for speaking to me on February 23, 2007. Please find attached materials with
regard to our conversations. Please understand that we know what and who we are
dealing with and pray to Almighty God that, like us, you have the integrity, morality, and
courage to uphold the law, especially for the suffering children, despite the alleged illicit
entities involved.

(1) Hernandez Case: It is my understanding that Mr. Hernandez is interviewing
    criminal attorneys, will be pleading not guilty, and will be seeking a jury trial with
    the fullest discovery permitted by law. As I told you, we have multiple witnesses
    who saw the unlawfully appointed child attorney, David J. Wessel, who has never
    filed an appearance in my family's case since September 2002, go to Deputy Eric
    Gross and point out the Court Watchers just before the alleged criminal acts by
    Mr. Hernandez. Further, as I told you, we have a court transcript which proves
    that there was no disruption in the courtroom prior to the alleged criminal acts by
    Mr. Hernandez. I told you that I witnessed Deputy Gross lie on his radio
    when he was removing me from the courtroom and state that court watchers were
    disrupting the courtroom. Within seconds, Mr. Hernandez and I were descended
    upon by multiple deputies who were obviously called by Deputy Gross after Mr.
    Wessel spoke to him. I know this because after the incidents on March 30, 2006,
    in which three deputies were sitting in the back of the courtroom waiting to take
    me out when I exercised my constitutional rights to object to the unlawful actions
    of the state court agents, including Judge Donegan, Mr. Wessel, and/or opposing
    counsel, Mitchell Asher, I verified with the sergeant on duty that the only reason
    three deputies would be sitting in the back of the courtroom just before my case
    was called was because someone called them in anticipation of trouble. The

1

Ex P

order entered on that day by Judge Donegan is currently the subject of a US Supreme Court Writ of Certiorari docketed on February 9, 2007.

(2) Please be advised that we have documented **multiple** acts of alleged criminal intimidation by the Cook County Sheriff's deputies and have multiple witnesses to give material testimony to same. One incident involved the deputy in Judge Karen G. Shields' courtroom 2805 called, "Louie" and myself on or about April 26, 2006 when I was attempting to lawfully assist a co-member of IFCAA pursuant to our federally-protected rights of association. Deputy "Louie" actually walked past the female deputy (Banks) standing at the door, came into the small room in which I was unlawfully detained for one hour in gross violation of my civil rights, and closed the door behind him. He came at me in an intimidating and physically threatening way while yelling at me. I immediately screamed for help and the female officer immediately opened the door. [I thank God to this day that it was not Deputy Carroll who I am sure would not have opened the door. See below.] Deputy "Louie" exited quickly. Then I overheard several deputies (who I can identify by sight) talking about arresting co-founder of IFCAA, Karyn Mehringer. I came to the entrance of the room to show them that I heard what they were saying. They did not pursue it.

(3) Please find attached the written statement of Ms. Mehringer dated Wednesday, August 23, 2006 that she submitted with her Internal Affairs/Inspector General Complaint. Please see attached national press releases of August 18, 2006 and February 6, 2007 regarding the incident involving Cook County Sheriff's Police Detectives harassing her at her home and the disposition of the investigation.

(4) Please be advised that after the proceedings on February 23, 2007 at which six Court Watchers witnessed the alleged criminal acts[1] being committed against me and my two sons by Judge Donegan, Mr. Wessel, Mr. Asher, and my ex-husband including but not limited acts in violation of the Illinois Wrongs to Children Act and the Illinois Criminal Code of 1961 Article 32: Interference with Judicial Procedure, including but not limited to 32-2 Perjury, 32-3 Subornation of Perjury, and 32-4a Harassment of Witnesses (note: my 16-year-old son who has been illegally held against his will with his 4/23/02 court-verified abusive father since 10/31/05 is a material witness to the judicial fraud on Judge Donegan and Lake County Judge Geiger of October 14, 2005 just before he was illegally seized], Article 33: Official Misconduct, 12-6 Intimidation, 31-4 Obstructing Justice, 8-1 Solicitation of same, 8-2 Conspiracy of same, and 8-2.1 Conspiracy Against Civil Rights [for which Detective Moran is now a material witness], Cook County Sheriff's Deputy Carroll (#5102) attempted to allegedly frame another court watcher. Deputy Carroll went up to one of the male court watchers and told him he had to leave. This gentleman is a seasoned court watcher and calmly responded, in effect, was the deputy suggesting that he was not permitted to

---

[1] The Illinois Attorney General Madigan and the Cook County State's Attorney Devine have been advised of same.

Ex P

exercise his civil right to witness the public proceedings. It is my understanding
that in very much in the same way that Sergeant Thomas Boyd [#301] [in concert
with Attorney David Wessel and Deputy Eric Gross] incited the events involving
Mr. Hernandez on February 2, 2007 that resulted in his false arrest, Deputy
Carroll persisted in her alleged attempt to incite another false arrest of one of my
court watchers. The seasoned court watcher again remained calm and responded
respectfully. Another seasoned court watcher, realizing what was going on,
politely intervened and informed Deputy Carroll that, in effect, she must not be
aware that Chief Kittrell (sp?) had been informed that there were going to be court
watchers exercising their civil rights to witness the public proceedings. Deputy
Carroll exited Courtroom 1506 straightaway – having been caught red-handed in
her alleged illegal act. We are all fully aware that only a judge can direct a
deputy. Please be advised that at one of my court dates in the Summer of 2006,
Deputy Carroll actually went up to another court watcher and told her that she
may not write during the proceedings. This same female court watcher (who is
very attractive) was physically man-handled on February 2, 2007 when her civil
rights were also violated [along with the three other court watchers that day] and
she was made to leave the Daley Center for no just case after the alleged framing
and false arrest of Mr. Hernandez. The male deputy "body-butted" the female
court watcher and made full contact against the front of her body with the front of
his body.

(5) For your convenience, I have attached the newspaper article about the incident
involving Deputy Gross and a reputable attorney that I referenced in the February
6, 2007 national press release. I have also included a chart from the book, <u>When
Corruption was King</u>, written by Attorney Cooley (sp?) who turned state's
evidence during Operation Greylord. Please note the range of public officials
convicted who were actors in the racketeering enterprise. The court transcript of
February 2, 2007 also includes statements by Judge Donegan and Mr. Wessel that
they spoke to Barrington Hills Police Department officials, thereby making them
witnesses in the (illicit) order of protection proceedings before the court on
February 23, 2007, making Judge Donegan's recusal mandatory by law, and
making my right to question them on the stand regarding what was said in their
self-proclaimed conversations with the Barrington Hills Police officials a de facto
matter of law. [I am also entitled to subpoena the Barrington Hills Police
Department officials who spoke with Judge Donegan and Mr. Wessel as witnesses
as a de facto matter of law.] The reason I was out in the hall when the Chief and
Detective Moran came walking down the hall was because Judge Donegan had
me removed from the courtroom when I was trying to quote the Illinois Supreme
Court Code of Judicial Conduct Rule 63 (C)(1)(a) and (e)(iv) and 735 ILCS 5/2-
1001 Substitution of Judge (a) (1) Involvement of judge.

(6) Lastly, please be advised that entering criminally perjurious orders of protection
against protective parents is a classic pattern of practice in the alleged local
racketeering enterprises that have infiltrated the family courts across our nation
which have resulted in the deaths of children. Again, Detective Moran is a

3



material witness to this alleged criminal act. My once thriving 16-year-old son almost died of a drug overdose on January 11, 2007. My son secretly called me on January 25, 2007 and told me that his father told him never to tell me because it would get his father and Mr. Wessel "in trouble." He also told me that "no one" was going to go to the plenary hearing for order of protection scheduled in Lake County on January 31, 2007 which was illegally transferred to Judge Donegan and he entered the illegal interim order of protection two days later..

Gentlemen, Mr. Wessel thought I was the heiress to the Rand McNally map company fortune. I have concrete material evidence of his alleged extortion and coercion under duress. My ex-husband owes me over $100,000 for an unenforced financial default order entered October 19, 2004. Custody is not even at issue in my case due to a Second Motion for Rule 219 Sanctions on my ex-husband's criminally perjurious sole custody petition of January 2002. I have lost my children and over $1 million since January 2002 when my family was dragged into the racketeering enterprise. This is not rocket science. But what do you think a PhD-level research scientist with a brave heart, indomitable faith, and photographic memory is going to do when alleged criminals take her children! This is crime that is destroying children across the nation. I can only sincerely pray that you have not also sold your souls, too. Help me help not only my children but the nation's children – just like Mr. Hernandez was doing on February 2, 2007.

Thank you for your attention to this important matter. I look forward to Detective Moran's follow-up call.

Respectfully Submitted,

Sheila A. Mannix, PhD

Enclosures.

4

EX P

http://www.prbuzz.com/ifcaas-mannix-announces-chicago-attorney-nyes-statement-you-are-like-a-jew-in-the-holocaust.-1769.html

## IFCAA's Dr. Sheila Mannix Makes Public the Statement by Chicago Divorce Attorney Sandra G. Nye: "You are like a Jew in the Holocaust."

CHICAGO – April 4, 2007 –Illinois Family Court Accountability Advocates (IFCAA) announces that on November 18, 2002, Dr. Mannix's own post-divorce attorney, Sandra G. Nye, stated to her, "You are like a Jew in the Holocaust."

This statement was made to Dr. Mannix after an over two-hour joint "interview" with the Cook County court-appointed Child Representative David J. Wessel (recommended to the court by Nye) and Dr. Mannix's court-verified abusive ex-husband, Daniel P. Sheetz, Sr., during which Wessel allowed Sheetz to physically-threaten Mannix. [While in his office on Randolph St., Chicago, Wessel allowing abusive men to threaten the mothers of children to whom he has a court-appointed fiduciary duty has been reported by multiple Cook County moms.]

Evidence indicates that Nye and Wessel dragged Mannix and her children into the illicit racketeering enterprise in the Cook County Court after Sheetz filed a fraudulent nine-year post-divorce sole custody petition in January 2002 because these alleged major actors in the enterprise erroneously believed Mannix to be the heiress of the Rand McNally map company fortune. Mannix has been criminally impoverished - losing over one million dollars in the five-year malicious prosecution. Her children have been irreparably harmed and have been forced against their wills to be held hostage with Mannix's abusive ex-spouse for over 18 months with "no contact" with their mom in retaliation for Mannix standing up to the public corruption. Sheetz, with the constant threat of physical violence against them, has threatened the children that they will never see their mom again if they try to get help. The threat was, in part, carried out by recently deceased Cook County Judge James G. Donegan on February 23, 2007 with the entering of a two-year order of protection against Mannix – based only on the verified criminally perjurious testimony of Sheetz, the abuser - thereby covering up Mannix's court-sanctioned abused sons' run away attempts, self-mutilation, and drug overdose (the prior month) and criminally silencing the teenagers who are witnesses to judicial crime.

Nye confirmed her statement to her client during a December 5, 2002 meeting before five witnesses (organized by Mannix). One witness, a Jewish professional well-known to Dr. Mannix stated to her, **"If you had been a Jew in the Holocaust, you would have helped organize the Warsaw Ghetto."**

Victims of documented local racketeering enterprises partnered with the previously reported alleged organized crime infiltration of the US judicial system are just supposed to go away after their constitutional rights, their children, and/or their property are stripped from them. Otherwise, they will most likely end up falsely incarcerated which has been the fate of hundreds of innocent citizens who have stood up for their rights and those of their children and fellow citizens. **Is Dr. Mannix the next to be jailed – or worse?**

Ex Q

Victims of judicial crime are not supposed to:

(1) Interview with the FBI and learn what material evidence is needed to secure indictments and convictions;

(2) Form a grass-roots organization;

(3) Together learn state and federal constitutional and civil and criminal law and court procedures;

(3) Create the records of co-members irrefutably documenting the crimes of state and federal court agents, **especially against the nation's children**;

(4) Begin releasing national press releases exposing the evidence;

(5) Network with courageous individuals and organizations nation-wide who are fighting - and documenting - the same public corruption in state and federal courts in which court agents have access to private, corporate, and government funds, specifically, bankruptcy, probate, and family courts and child protective services agencies;

(6) Obtain material evidence from organized crime informants further proving the crimes of state and federal court agents, specifically, bribery, extortion, and coercion under duress as well as massive fraud against the government and theft of public services on the taxpayers' tab; and

(7) Continue to expose the crimes through the media and to the responsible civil and criminal authorities while shouldering the retaliation, praying for strength and courage, praying for the suffering children, and praying that someone in the government will do his or her job.

What Dr. Mannix and thousands of other victims of judicial crimes did not anticipate is that the civil authorities, state and federal administrative agencies, legislators, and criminal investigators and prosecutors responsible to stop these crimes would refuse to do their jobs funded by taxpayers' dollars. Evidence indicates alleged involvement of some. And the handful who try are retaliated against. **Just ask the US Attorneys who were fired and/or transferred.** It has been reported that two female US Attorneys were allegedly killed in Kansas.

Like thousands of other innocent victims of state and federal court criminal acts, Dr. Mannix has been repeatedly threatened with false incarceration for exercising her constitutional right to seek protection and relief from the court. She witnessed her IFCAA co-member, Michael Lynch, the criminally defamed former chairman of McCook Metals, LLC, falsely incarcerated on October 13, 2004. She witnessed her Court Watcher, Jaime Hernandez, framed by Child Rep. Wessel and Cook County Sheriff Deputy Eric Gross, and falsely arrested on February 2, 2007.

On February 23, 2007, the same Cook County Sheriff's Police Detective who harassed Mannix's IFCAA co-founder, Karyn Mehringer, at her home on the evening of August 17, 2006 was at Mannix's hearing on February 23 when Judge Donegan entered the criminally perjurious two-year order of protection against Mannix. [Jason Moran. Badge Number 952.]

Judge Donegan died the following weekend of March 3rd, 2007.

IFCAA had previously reported the harassment of Ms. Mehringer in their Business Wire press release of August 18, 2006. In court on August 17, 2006, Mehringer's motion presented on that day, **"Emergency Motion for Judicial Admission or Denial by Judge**

Ex Q

**Karen G. Shields Regarding Knowledge of and/or Participation in Alleged Criminal Acts Within and Across State Lines by Judges in the Circuit Court of Cook County, Illinois, and Other Relief *Instanter*"** had five documents from one of the organized crime informants that indicated the alleged involvement of Cook County Associate Judge Karen G. Shields, daughter of convicted Greylord ex-judge David Shields.

Material evidence from organized crime informants indicates alleged involvement of Attorney Wessel, Judge Shields, and the estate of deceased Judge Donegan in the alleged organized crime infiltration of the US judicial system.

**Upon the news of the death of Judge Donegan, Mannix immediately filed an emergency pleading to test the waters. Sure enough, the aggressive cover up of Judge Donegan's documented illegal acts against Mannix and her two children by multiple judges of the Cook and Lake County circuit courts has been staggering.**

Mannix was informed that Associate Judge LeRoy K. Martin, Jr. currently of the Sixth Municipal District in Markham is slated to replace Donegan. Court records verify that Judge Martin is engaging in alleged criminal acts just like Donegan allegedly did. Most notable is the case of the illegal removal of the children of Joanne and Jerry Nicholas by the Illinois Department of Children and Family Services. On or about December 13, 2006, Judge Martin entered two-year order of protections against the wronged parents when they exposed that one of their daughters is the alleged victim of rape and beatings by the foster father and brother. [Case Nos. 06 OP 60882 and 60883]

(1) On March 9, 2007 Presiding Judge Moshe Jacobius refused to hear Mannix's emergency matter despite his entering orders in her case on February 23, 2007, immediately before Donegan's illegal acts on said day. Said orders further documenting Donegan's lack of jurisdiction over Mannix's younger son;

(2) Mannix was sent to a Judge R. Morgan Hamilton (in the courtroom next to Donegan's) who denied Mannix's emergency relief but not before making Child Rep. Wessel and opposing counsel, Mitchell F. Asher, finally fill out and sign appearance forms in a case in which each had been stepping up for over four years and two years, respectively, without legal standing to do so. The appearance forms have not been filed to date despite Judge Hamilton instructing her personal clerk to do so on the 9th.

(3) Mannix immediately drafted a motion to vacate Judge Hamilton's order due to irrefutable fraud upon the court by Hamilton, Wessel, and Asher;

(4) On March 15, 2007, through the circuit court clerk's "motions desk," Mannix officially got on the "Calendar 62 court call" for March 23, 2007 at 10:00 a.m. Case Sequence No. 4;

(5) On Tuesday, March 20, 2007, when Mannix attempted to deliver the required Courtesy Copies to Judge Hamilton, the judge's personal clerk refused them. Mannix sought help from Presiding Judge Jacobius' assistant who directed Mannix to give the documents to the circuit court clerk for delivery to Judge Hamilton;

(6) On Friday morning, March 23, 2007, Mannix discovered that her case was illegally removed from the court's 10:00 a.m. call and the courtesy copies were returned to the circuit court clerk;

(7) Presiding Judge Jacobius sent Mannix's case to a new judge, Judge Jeanne Cleveland Bernstein.



On March 23, 2007, for approximately ninety minutes, Judge Bernstein verbally and emotionally battered Dr. Mannix. This judge, who Mannix had never seen before, threatened Mannix with false incarceration over a dozen times. Two or more Cook County Sheriff's deputies waited to take Mannix into custody during the entire "Gestapo Treatment." Judge Bernstein, on court record, viciously stated that if she interviewed Mannix's sons, they would say that they never wanted to see their mother again. Mannix stood her ground repeatedly stating the facts and supporting law. At one point, Judge Bernstein raged at Mannix, in essence, to stop quoting the law while repeatedly defaming Mannix.

When it became apparent to Judge Berstein that she could not break Mannix, she transferred the case back to Presiding Judge Jacobius who transferred it to Judge Hamilton, the judge Mannix was originally supposed to see before the documented alleged criminal acts of Judge Bernstein against Dr. Mannix. Judge Hamilton continued the emergency matter to April 18, 2007 in direct violation of Illinois law and Mannix and her children's federally-protected constitutional equal access to the court, due process of law, and freedom from abuse rights.

Judge Hamilton actually stated on court record that it was up to Mannix whether Mannix wanted Judge Hamilton to proceed with the emergency motion or if she wanted Judge Hamilton to recuse herself, which was requested in Count One of Mannix's seven-count emergency motion with supporting affidavit detailing the state court agents' fraud upon the court.

On that day, Friday, March 23, 2007, Mannix was just a mom fighting for her children's freedom. But she was able to stay strong and continue her mission to create the record of state and federal court agents' crimes because she kept the nation's suffering children in the forefront of her mind.

And at 7:00 a.m. that Friday morning she received a call from an insider informing her in detail what was going to take place that day, namely, that **multiple Cook County judges were going to conspire to commit and commit criminal acts against her and her children.** Mannix was encouraged to pray, "No matter what they do to you just keep praying." And Mannix did, over and over and over again throughout the five-hour ordeal.

"Merciful Love, I offer myself to Thee to do with me and to be with me as Thou wilt. Relieve me of the bondage of self that I may better do Thy will. Take away my difficulties that victory over them may bear witness to those I might help of Thy Power, Thy Love, and Thy Way of Life. May I do Thy will always. 'For God is Love. And she who abides in Love, abides in God, and God in her.' (John 4:16) Amen."

"Mom, Love is not a noun. Love is a verb. Love is an action verb." (Brian Sperry, age eight, out of the blue one day on the way to school)

Then on March 27, 2007, Lake County Judge Waldeck attempted to cover up his involvement in the entering of the criminally perjurious order of protection against Mannix when on January 31, 2007, after an illegal phone call with Cook County Judge Donegan who had had no jurisdiction over Mannix and her children since September 29,

4

EX Q

2005, Waldeck transferred Mannix and her sons' Lake County petitions for order of protection to Donegan on the day her younger son's petition was set for plenary hearing and three subpoenaed witnessed where present to testify on the teenager's behalf.

On the 27th, Mannix again stood her ground while stating the facts and supporting law. Judge Waldeck threatened Mannix with false incarceration when she lawfully objected to his committing fraud upon the court. After Mannix asked Judge Waldeck "from her heart" to do the right thing, obey his oath of office and his fiduciary contract with the people of the State of Illinois funded by taxpayers' dollars, and she stated, "I'm sorry, your Honor, but I have a photographic memory," Judge Waldeck recused himself. Three days later, Judge Waldeck left the Family Division of Lake County Court.

Mannix's younger son's Lake County Petition for Order of Protection was transferred to Judge Jorge L. Otiz. Mannix has filed an emergency motion for the testimony of her teenaged sons for presentation before Judge Ortiz on April 5, 2007 at 9:00 a.m. Holy Thursday.

Please stay tuned as IFCAA exposes evidence of illegal acts in other cases. Dr. Mannix and her sons' story is but one of thousands of documented cases nation-wide of judges committing criminal official misconduct, interference with judicial procedure, intimidation, and harassment of witnesses for personal financial gain while stealing the nation's children and property – and freedom.

Resources:
www.courageouskids.net
www.judgesabovethelaw.com
www.clr.org
www.jail4judges.org
www.floridajail4judges.org
www.sunshinecoalition.blogspot.com
www.floridasunshinecoalition.blogspot.com
www.gyropower.com
www.montessoripeaceschool.org

Past Press Releases:
May 31, 2006
June 19, 2006
July 19, 2006
August 18, 2006
August 22, 2006
August 23, 2006
February 1, 2007
February 6, 2007
March 26, 2007, No. One
March 26, 2007, No. Two

Contact:
Sheila A. Mannix, PhD
(847) 971-6679
smannix88@sbcglobal.net

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF )
)
Thorsten Lundsgaarde )
)
Petitioner, )
) No.    00D17293
)
and )
)
Anna Benjakul )
)
Respondent. )    Cal. 21

### ORDER

This matter coming before the Court on July 17, for hearing on a number of
motions and pleadings filed by the parties. Those matters are addressed by separate
order/s. The Court being fully advised in the premises, THE COURT FINDS and
ORDERS as follows:

1. Petitioner caused to be sent to the Court numerous documents including a
   May 17, 2007 letter, a June 1, 2007 letter, and July 13, letter. These letters
   are not part of pleadings and contain substantive allegations. Petitioner has
   previously been admonished not to submit to the court materials that are not
   pleadings.

2. In addition to the letters referenced in paragraph 1, Petitioner filed a Motion
   for Leave to File Responses Late, a Response in Opposition to Respondent's
   Motion for Hearing, Instanter, and for Other Relief on Thorsten
   Lundsgaarde's Motion for Psychiatric Evaluation of Child Representative,
   Ralla Klepk(sic), Response in Opposition to Respondent's Motion for 508(b)
   fees, and Response in Opposition to Respondent's Second Petition to Suspend
   Visitation and for Other Relief.

3. Petitioner is admonished that said pleadings and letters contain harassing,
   inflammatory assertions that are designed to harass and intimidate the
   attorney for Respondent, the Child Representative and the Court, cause
   delay and needless litigation, malign the personal character of the attorneys
   and the Court, obstruct the Court in the due administration of justice and
   bring the administration of justice into disrepute.

4. The above-referenced letters are stricken in the entirety.



5. Paragraph 4 and the attachment Exh A. of Petitioner's Motion for Leave to File Responses Late are stricken.

6. Paragraph 5 of Petitioner's Response to Respondent's Motion for Hearing Instanter and for Other Relief on Thorsten Lundsgaarde's Motion for Psychiatric Evaluation of Child Representative Ralla Klepk (sic) is stricken.

7. The last sentence of Paragraph 2, and the second sentence of paragraph 4, all but the first sentence of Paragraph 9, and the second sentence of paragraph 11 of Petitioner's Response in Opposition to Respondent's Motion for 508(b) fees are stricken.

8. Paragraphs 2, 3, and 5, (with the exception of the first sentence), the last two sentences of paragraph 6d and e, the last sentence of paragraph 9, all but the first sentence of paragraph 10, 11, 12 and 14, 16, 17, 18, 19, and 20 of Petitioner's Response in Opposition to Respondent's Second Petition to Suspend Visitation and for Other Relief are stricken.

9. Petitioner is admonished should he continue to file pleading that the Court finds to contain harassing, inflammatory assertions that are designed to harass and intimidate the attorney for Respondent, the Child Representative and the Court, malign the personal character of the attorneys and the Court, obstruct the Court in the due administration of justice and bring the administration of justice into disrepute this Court may strike the entire pleadings, may impose sanctions on him pursuant to Illinois Supreme Court Rule 137 and/or find him in direct criminal contempt of this Court.

Enter:

ENTERED
JUDGE NANCY J. KATZ-1796
JUL 17 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Ex R

1

1    STATE OF ILLINOIS      )
                            )    SS:
2    COUNTY OF COOK         )

3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
         COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION
4

5

6    IN RE:  The Former Marriage of    )
                                       )
7    SHEILA MANNIX,                    )
              Petitioner,              )
                                       )
8         and                          )   No. 93 D 2984,
                                       )   et al.
9    DANIEL SHEETZ,                    )
              Respondent.              )
10

11

12              Transcript of a voicemail message to

13   phone number 847-971-6679, recorded on May 17, 2007

14   at 7:08 P.M.

15

16

17

18

19

20

21                                              ORIGINAL

22

23

24

Ex 5

2

1           VOICEMAIL MESSAGE:  From phone number

2    847-873-4322.  Received May 17th at 7:08 P.M.

             THE RECORDED VOICE:  Sheila, it's Michael.

4    Call me if you get a chance tonight.  But I'll

     leave a voicemail to you.

6               Your name came up today on a deposition

7    that my brother had to sit for with Braun.  And

8    then something else came up regarding a Cook County

9    Sheriff and my brother.  I want you to call me so I

10   can explain.  This is very important.

11              I wrote down the details so thre's not

12   a misunderstanding here because this is a very

13   important message being conveyed here.  It's a

14   threat basically, a very strong threat regarding us

15   in association with you and what's going to happen

16   to you.

17              I find this extremely fascinating, yet

18   at the same time very troubling.

19              So call me when you get a chance.  Bye.

20                          (WHICH was the entirety of the

21                          message left at this date and

22                          time.)

23

24

EX 5

3

STATE OF ILINOIS      )
                      )  SS:
COUNTY OF COOK        )

     I, Esther J. Egan, Certified Shorthand

Reporter, in and for the State of Illinois, do

hereby certify that the foregoing transcript was

recorded stenographically by me and was reduced to

writing by me by means of computer-aided

transcription and that the said transcript

constitutes a true record of the voicemail

recording heard by me.

     I further certify that I am not a relative

or employee or attorney or counsel of ay of the

parties, or a relative or employee of such attorney

or counsel, or financially interested directly or

indirectly in this action.

     IN WITNESS WHEREOF, I have hereunto set my

hand at Glenview, Illinois, this 6th day of June,

A.D., 2007.



C.S.R. No. 084-001124

Ex S

FROM : MARIE SZCZYPTA          FAX NO. : 847392059514          Jul. 12 2007 02:59PM  P1
JUN -29 07(FRI) 09:34    CRAIG HAMMOND ATTY

(COPY)

STATE OF ILLINOIS      )                    #31467
                       )SS:
COUNTY OF C O O K      )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:           )
ROBERT SZCZYPTA                  )
            Petitioner,          )
                                 )
and                              )   No. 99 D 13200
                                 )
MARIE SZCZYPTA                   )
            Respondent.          )

ORDER

THIS MATTER COMING sua sponte on the Court's motion, the Court

having previously warned the Respondent, MARIE SZCZYPTA, in open court on May

17, 2007 regarding her filing of false pleadings, the Court now finding that since May

17, 2007 MARIE SZCZYPTA has continued to file false motions with outright

fabrications and ~~are~~ *false allegations* said false motions having been filed for no other reasons than to

harass ROBERT SZCZYPTA, needlessly increase the cost of the litigation and *to harass the Court*

unnecessarily delay resolution of the litigation, the Court having jurisdiction

WHEREFORE IT IS HEREBY ORDERED:

    1. Should MARIE SZCZYPTA file another false pleading containing outright

fabrications and *false allegations* ~~~~ *direct Criminal* of contempt against MARIE SZCZYPTA and *the court will consider an order*

sanctions will be imposed against her.

ENTER:          ENTERED
                CLERK OF CIRCUIT COURT
                DOROTHY BROWN

                JUN 28 2007

JUDGE          KANE  DEPUTY C...

CRAIG B. HAMMOND, LTD.
Attorneys for Petitioner
77 W. Washington Street, Suite 1805
Chicago, IL 60602
(312) 236-5006
Attorney Number: 31467

Ex T

To.         "Sheila Mannix" <smannix88@sbcglobal.net>
Subject.    they are still adding the docs for Madigan
Date.       Tue, 4 Sep 2007 15:08:02 -0700



Tuesday, September 04, 2007

Recorded Document Search List

| NAME | RECORDING NUMBER | RECORDING DATE | DOCUMENT CODE | DC |
|------|------------------|----------------|---------------|-----|
| MADIGAN LISA | 19960769915 | 10/30/1996 | WAR DEED | |
| MADIGAN LISA | 19960769916 | 10/30/1996 | DEED TRST | |
| MADIGAN LISA | 19990153136 | 02/18/1999 | REL D/T | |
| MADIGAN LISA | 20020570363 | 06/04/2002 | DEED TRST | |
| MADIGAN LISA | 20030875111 | 07/03/2003 | WAR DEED | |
| MADIGAN LISA | 20030875112 | 07/03/2003 | DEED TRST | |
| MADIGAN LISA | 20030875113 | 07/03/2003 | A DEED TR | |
| MADIGAN LISA | 20031352726 | 09/26/2003 | JNT DEED | |
| MADIGAN | 20031670545 | 12/09/2003 | REL D/T | |

Ex 4

| | | | |
|---|---|---|---|
| LISA | | | |
| MADIGAN LISA | 20031746301 | 12/30/2003 | SPEC/W D |
| MADIGAN LISA | 20031746302 | 12/30/2003 | DEED TRST |
| MADIGAN LISA | 20040016225 | 01/07/2004 | DEED TRST |
| MADIGAN LISA | 20040289248 | 03/22/2004 | REL D/T |
| MADIGAN LISA | 20040410325 | 04/16/2004 | Q/CL DEED |
| MADIGAN LISA | 20041464437 | 12/13/2004 | WAR DEED |
| MADIGAN LISA | 20041464438 | 12/13/2004 | DEED TRST |
| MADIGAN LISA | 20050401851 | 03/31/2005 | WAR DEED |
| MADIGAN LISA | 20050559541 | 04/29/2005 | Q/CL DEED |
| MADIGAN LISA | 20050559542 | 04/29/2005 | DEED TRST |
| MADIGAN LISA | 20050559543 | 04/29/2005 | DEED TRST |

Ex 4

### Sheila A. Mannix, PhD
*Clinical Psychologist-Neuroscientist-Educator*
**1118 RFD Long Grove, Illinois 60047**
**(847) 971-6679**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### FACSIMILE CORRESPONDENCE AND

### OFFICIAL NOTICE FOR THE RECORD

US Attorney Patrick Fitzgerald                       312-353-4324
FBI-Chicago Director Robert Grant                 312-829-5172
BCC

FROM      Dr. Sheila Mannix                                    ONE OF 15

DATE      Friday, November 16, 2007

**Notice of Imminent Threat of Harm as Witnesses to Public Corruption
Including But not Limited to False Incarceration**

**Continued Criminal Acts by Public Officials**

**Follow-Up to Past Notices Including but not Limited to those of 11-7-07
and 06-07-07**

**Direct Formal Request for Protection and Relief before 12-5-07**

Dear Sirs:

(1) Given the conduct of multiple state court agents and those acting on their behalf on
November 13, 2007, I am hereby formally informing you that my sons and/or
myself are at imminent risk of continued harm including potential fatal injury due
to the fact that we are witnesses, victims, and/or informants of alleged verifiable
public corruption. If it is reported that any one of us has died of an accident, it was
not an accident.

(2) On November 13, 2007, because I am a witness, victim, and/or informant to the
alleged verifiable public corruption in the Circuit Courts of Cook and Lake
Counties, I was again informed by an insider in the Circuit Court of Cook County
that I was going to be framed and falsely arrested by the Cook County Sheriff's
Office in conspiracy with bench and bar (1) just like my Court Watcher Jaime
Hernandez was on February 2, 2007, (2) like an attempt was made on February 23,
2007 when Cook County Sheriff's Police Detective Jason Moran (#950) showed up
at my civil proceeding before Donegan, and (3) like I had been warned and was
able to avert on March 23, 2007 and April 18, 2007 [about which you have been
previously informed].



(3) On November 13, 2007, the actions of multiple employees of the Cook County Sheriff's Office beginning with Deputy Penny who was manning the security x-ray machine at the Daley Center, employees of the Chicago Police Department including Sergeant Villalobos [#2327], Judge Eileen M. Brewer, court-appointed attorney, David Wessel, and opposing counsel and ex-Assistant State's Attorney Steven Rissman confirmed the insider's warning.

(4) I again took immediate proactive measures to avoid the framing and false arrest, got to the Sheriff's Office [Rm 705], requested protection from the Sheriff's Office, and called "9-1-1" to seek protection from the Chicago Police Department for my legitimate and justified fears of ongoing violations of the Illinois Criminal Code of 1961 including but not limited to violations of Sections 12, 26, 32, and 33 and ongoing violation of the Illinois Wrongs to Children Act against me and my sons.

(5) I was escorted to the courtroom of Judge Brewer for my appearance before her by two Cook County Sheriff's sergeants, Moore (#309) and Griffith (#271). When my case was called, Judge Brewer, who lost authority and jurisdiction over my case on September 18, 2007 and whose jurisdiction has not been lawfully restored, threatened, harassed, and intimidated me with the aforementioned 11-07-07 fax in her hand. Her irrational ranting and illegal threats, harassment, and intimidation against me were similar to that which were perpetrated against me by Judge Alexander White on December 20, 2006 [affidavit attached.], by her on September 18, 2007 [notice to Sheriff's Office attached], and by multiple other judges in varying degrees including but not limited to Judges Donegan, Shields, Hamilton, Cleveland Bernstein, and Mathein.

(6) One could argue with confidence that these judges transparently indict themselves by their irrefutably illegal actions toward me, a mom who had never done anything wrong but has lost her children for over two years, has lost over one million dollars, and has been defamed and criminalized, solely because I have stood up to the irrefutable illegal acts of state court agents against me and my family because they erroneously thought I was the heiress to the Rand McNally map company fortune.

(7) Before Judge Brewer on Tuesday, I stood my lawful ground, stated she was acting without jurisdiction, asked her what evidence she had to back up her allegation that I had unlawfully faxed her the 11-07-07 fax about which she was prepared to incarcerate me, and reiterated that under no authority of law am I required to obey void orders which are of no legal force and effect even prior to reversal. She further committed criminal acts against me and my sons and maliciously deprived our rights under the color of law in the clear absence of all jurisdiction and in violation of non-judicial, non-discretionary administrative law for which there is no immunity by preventing the transfer of the lawfully filed, noticed and served pleading for disciplinary action about which you were informed on 11-07-07. In further malicious deprivation of rights under the color of law, critical matters were continued for status to 12-10-07 as they have been since June 2005 causing the

2

Ex V

<u>**undeniably intentional irreparable harm, injury and loss to my sons and**</u>
<u>**myself including our criminal impoverishment.**</u> Our home will be sold at
auction in December despite an unenforced and unappealable default judgment
worth over $100,000 entered in October 2004.

(8) I waited for an extended period of time for a Chicago Police Officer to respond to
my "9-1-1" call. I was informed that they were initially not going to respond
because they had been told not be bother <u>because I had already been arrested by the</u>
<u>Sheriff's Office.</u>

(9) When Sergeant Villalobos finally came, we conversed for several minutes.

(10)     I informed him and/or Deputy Chief DiCaro (#102) of the warrants, levies,
and evictions unit of the Sheriff's Office regarding:  (1) my interview with the FBI
in June 2005, (2) co-founding of IFCAA shortly thereafter, (3) creation of records
of alleged verifiable criminal acts by state and federal bench and bar in several
exemplary IFCAA co-members' cases over the next year, (4) national press release
of June 19, 2006, (5) contact by organized crime informants in Utah and Arizona,
(6) engagement of Private Investigative Firm to watch our backs in anticipation of
judicial retaliation, (7) initiation of the entering of the documents from the mob
informants of alleged involvement of judges and attorneys in Chicago into the
record in August 2006, (8) immediate alleged retaliation against multiple co-
members of IFCAA including myself, Karyn Mehringer, Marie Szczypta, and
Michael Lynch by public officials, (9) Judge Karen Shields' false police report and
the creation by Moran of the fraudulent Intelligence Bulletin against three moms
and the turning over our personal information as alleged domestic terrorists on
August 16, 2006, (10) giving witness testimony on October 13, 2006, (11)
Michael's false arrest on October 13, 2006 and the almost immediate exit from the
bench of Judge McNamara who incarcerated him, (12) other judges leaving the
bench and/or recusing from cases when only one document from the mob
informants were attached to lawful pleadings, (13) catching the criminal court
magistrate judge and Cook County Assistant State's Attorney unlawfully
prosecuting my Court Watcher having illegal ex parte communications and
carrying around the fraudulent Intelligence Bulletin, (14) in September I received
information from the informants of alleged involvement of the AG with the mob
which I lawfully put into the record in mid-September, (14) by the end of
September, two Assistant Attorney Generals showed up at a co-member's place of
employment investigating me for false allegations of practicing law without a
license, etc., etc., etc.

(11)     *Arguendo*, if I'm allegedly severely mentally ill, barely function, delusional,
need to be on medication, and need to be incarcerated for a "prolonged" period of
time because I am incapable of following court orders, how is it that I can allegedly
be practicing law without a license? "Any form of official retaliation for exercising
one's freedom of speech, including prosecution, threatened prosecution, bad faith

3



investigation, and legal harassment, constitutes an infringement of that freedom."
***Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)***.

(12)       Sergeant Villalobus refused to create a police report for the specific alleged
crimes committed against me by public officials.  In response to my question,
"Why can't you take my police report?"  He stated, "It's Cook County property.
It's a county issue."

(13)       When I tried to offer the analogy that if a drunk driver heading west on
Randolph jumped the curve and hit us where we stood, the CPD would not create a
police report and file charges if the drunk driver was a judge?  He <u>literally</u> ran away
from me.

(14)       To again inform you pursuant to the pleading I faxed to you on      -09-07
that Judge Brewer illegally ignored:

"27. The settlement proposal offered by Dr. Mannix was the same as the one
offered on court record before Presiding court Judge Jacobius on April 18, 2007,
specifically, in exchange for the freedom of her abused teenaged sons from
their court-documented perpetrator, namely, the respondent, Dr. Mannix was
willing to waive all financial obligations of the respondent including the
unenforced and unappealable October 19, 2004 default judgment now worth
well over $100,000 and sign a mutual release that she would not pursue lawful
civil actions.  On April 18th, Judge Jacobius' response was, in effect, that he
could not be involved in coercion, and on October 31st, the Child
Representative David Wessel's only concern was that any criminal prosecution
against himself be included in the release." [Page 12, **Petitioner's Motion
Before Presiding Judge Jacobius for Initiation of Disciplinary Measures
Against Judge R. Morgan Hamilton and Attorneys Wessel, Asher, and
Rissman Pursuant to Supreme Court Rules 63(B)(3) and 8.3(a)&(b)]**

15)       Note that documents from the mob informants of alleged involvement of
Judge Brewer and Attorney David Wessel were entered into the record in August
2007.

16)       I received the attached letter dated June 22, 2007 from the FBI-Chicago in
response to my June 7, 2007 notice to you.

(17)       Pursuant to the manifest weight of irrefutable evidence in hundreds of
records in the Cook and Lake Courts, not just my family's records, verifying that
state court agents in same are acting in alleged violation of multiple federal statutes
including but not limited to federal RICO law [as defined in 18 U.S.C. § 1961] and
18 U.S.C. §§ 1512 and 1513 including violations against child witnesses, I humbly
and respectfully request the direct assignment through the US Attorney's Office of
a specific FBI investigative team to take the point on investigating this serious

4

EX V

matter which involves alleged verifiable public corruption allegedly involving the Illinois Attorney General's Office, Cook and Lake County State's Attorneys' Offices, Cook and Lake County Sheriff's Offices, multiple Cook and Lake County judges, multiple attorneys, multiple court-appointed state court agents, and other public officials including alderman and higher court state and federal judges.

(18)      Sirs, I am back in court on December 5, 2007 in Lake County and December 10, 2007 in Cook County on my family's cases. Ms. Mehringer and I are in Lake County on December 11, 2007 for the hearing on the AG's Motion to Dismiss our defamation tort against Judge Shields for which we have filed a solid response brief and memorandum of law. [Said representation by the AG's Office an alleged violation of 5 ILCS 350/2(b).] I have no expectation of justice in any of the matters. But I must unfalteringly believe in justice for I brought children into this world. I fear for my physical safety and personal liberty due to uninterrupted threats against same by allegedly corrupt public officials and those acting in conspiracy on their behalf every time I attempt to exercise my constitutional rights and seek protection and relief for my sons and myself. I am of information and belief that Mr. Lynch was targeted for a mob hit when he was falsely incarcerated in October 2006. Might you please consider the possible headline:

"Chicago's Top Feds Take the Point: Message to the Mob is "LEAVE THE CHILDREN ALONE."

For your contemplation, I attach a passage my great-grandfather wrote about inventiveness and courage as well as a poem by Amelia Earhart about the latter. A photo of them with Orville Wright is on my website, www.gyropwer.com. Corporate Overview, Biographies, Second Photo Essay: Structural Integrity.

Respectfully Submitted,

Sheila A. Mannix, PhD

Enclosures.

5

*Ex* √

### Courage

*Courage is the price which life exacts for granting peace.*
*The soul that knows it not, knows no release from little things;*

*Knows not the livid loneliness of fear*
*Nor mountain heights, where bitter joy can hear*
*The sound of wings.*

*How can life grant us boon of living, compensate*
*For dull gray ugliness and pregnant hate*
*Unless we dare*

*The soul's dominion?  Each time we make a choice we pay*
*With courage to behold resistless day*
*And count it fair.*

*Amelia Earhart, 1928*

Ex V

Elmer Sperry on the Spirit of Invention and Courage

Think as I may, I cannot discover any time in which I have felt in the course of my work that I was performing any of the acts usually attributed to the inventor. So far as I can see, I have come up against situations that seemed to me to call for assistance. I was not usually at all sure that I could aid in improving the state of affairs in any way, but was fascinated by the challenge. So I would study the matter over; I would have my assistants bring before me everything that had been published about it, including the patent literature dealing with the attempts to better the situation. When I had the facts before me I simply did the obvious thing. I tried to discern the weakest point and strengthen it; often this involved alterations with many ramifications which immediately revealed the scope of the entire project. Almost never have I hit upon the right solution at first. I have brought up in my imagination one remedy after another and must confess that I have many times rejected them all, not yet perceiving the one that looked simple, practical and hard-headed. Sometimes it is days and even months later that I am brought face to face with something that suggests the simple solution that I am looking for. Then I go back and say to myself, 'Now I am prepared to take the step. It is perfectly obvious that this is the way to do it and that the other ways all have their objections.' It usually transpires that the innovation-resisting public will find any amount of fault with the one that is finally chosen. But I have always been tolerably well fortified because I have the feeling that I have made a pretty thorough canvas of the methods which would in all probability occur to the other workers in this field...

Let us consider courage in a somewhat broader aspect. Courage is one of the greatest world forces, if not the greatest. It is courage that has marked leadership in all times. The great world advances in all departments, including the arts, have from time immemorial depended on the courage of leaders. True it is that this word has almost always been associated with wars and warriors. Men dream dreams and have visions and we call them visionary. Once in a while some of these have the inquisitive faculty, but their projects still may die in an early stage. In this case the world had not been advanced. However, when one other factor is added, namely, indomitable courage, then the pioneer pushes his way through untold hardship, finds the mountain pass, and is the first to envision the whole new world lying beyond – the sunlit fertile valleys and vast unrealized resources. Thus it is that the inventor achieves and, also, thus it is that in unfolding the

Ex V

secret of any nation's advance Courage is given a much broader significance
that is usually conveyed by narrative history.

From "Spirit of Invention in an Industrial Civilization," in *Toward
Civilization*, ed. Charles A. Beard, 1930, as found in *Elmer Sperry: Inventor
and Engineer* by Thomas Parke Hughes, John Hopkins University Press,
1971.

Ex V

| DATE/TIME OF REPORT<br>02-26-08/1435 | BARRINGTON-INVERNESS POLICE DEPARTMENT<br>GENERAL CASE REPORT | | | | | COMPLAINT NUMBER<br>0802-1586 |

| OFFENSE/INCIDENT<br>Violation of order of protection | LOCATION OF INCIDENT<br>210 North Hager Barrington, IL. 60010 |

| DAY/DATE/TIME OF INCIDENT<br>Wed./02-13-08/appr. 1500 | TYPE PREMISES<br>House for rent | WILL COMPLAINANT PROSECUTE<br>YES ☐   NO ☒ |

| REPORTED BY<br>Daniel Sheetz | ADDRESS<br>241 Otis Rd. Barrington Hills, IL. 60010 | PHONE<br>847-276-1660 |

| VICTIM NAME<br>Daniel Sheetz | RACE<br>W | GEN<br>M | DOB<br>090555 | VICTIM OCCUPATION<br>Furniture designer | BUSINESS PHONE<br>s.a.a. |

| VICTIM'S ADDRESS<br>241 Otis Rd. Barrington Hills, IL. 60010 | HOME PHONE<br>s.a.a. |

| DESCRIBE INJURIES | TRANSPORTED BY | TRANSPORTED TO |

| JUVENILE  PARENT CONTACTED | RACE | GEN | HOME ADDRESS | PHONE |

| | RACE<br>W | GEN<br>F | HOME ADDRESS<br>Unknown | PHONE<br>847-277-2255 |

| WITNESS NAME<br>Kevin Sheetz | | | HOME ADDRESS<br>241 Otis Rd. Barrington Hills, IL. | PHONE<br>847-276-1660 |

| WITNESS NAME | RACE | | HOME ADDRESS | PHONE |

| NAME AND ADDRESS OF SUSPECT     (AGE, RACE, DESCRIPTION, RELATIONSHIP WITH COMPLAINANT OR WITNESS) |
| Sheila Mannix-Ex-spouse of reporting person,1118 RFD Robert Coffin Parker Rd. Long Grove, IL. |

| M/O HOW DONE, FORCE USED<br>See narrative | TOOL OR WEAPON<br>See narrative | OTHER ACTS OR TRADEMARKS |

| VEHICLE INVOLVED<br>YES ☐  NO ☒  UNK ☐ | YEAR, COLOR, MAKE, MODEL, BODY STYLE, LIC. NO, STATE, VIN |

| WORTHLESS DOCUMENT | DOCUMENT COLOR | DOC TYPE | DOCUMENT DATE | DOC NUMBER | FIRM NAME ON DOCUMENT |
| | NAME AND NUMBER OF BANK | | MADE PAYABLE TO | | SIGNATURE ON FACE OF DOCUMENT |
| | REASON NOT HONORED | | TYPE OF PROPERTY OR SERVICE OBTAINED | | AMOUNT OF DOCUMENT<br>$ |

|     | | CODES       S=STOLEN     D=DAMAGED PROPERTY     L=LOST PROPERTY | | |
| PROPERTY SECTION | Code<br>S-D-L | QTY | DESCRIPTION<br>(SIZE, COLOR, MODEL, STYLE, MATERIAL, CONDITION) | SERIAL NUMBER | VALUE |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |

**Type of criminal activity codes**

**Aggravated Assault/homicide circumstances**                                    NOT APPLICABLE ☒

**Relationship of victim to offender**

**Bias Motivation**

| REPORTING OFFICER<br>Off. M. Byrne, 141 | APPROVING SUPERVISOR | Page 1 of 2 Pages |

E+ W

## BARRINGTON-INVERNESS POLICE DEPARTMENT
### REPORT NARRATIVE

| OFFENSE ☒      CHARGE ☐      INCIDENT ☐ | | COMPLAINT NUMBER |
|---|---|---|
| Violation of order of protection | | 0802-1586 |

| COMPLAINANT ☒      ARRESTEE ☐      VICTIM ☐ | | |
|---|---|---|
| Daniel Sheetz | SUPPLEMENT ☐  CONTINUATION ☒ | PAGE 2 OF 2 |

**NARRATIVE**

According to the reporting person, he received a fax from his ex-wife's mother regarding information she received from her daughter, Sheila Mannix. In the letter, Ms. Mannix informed her mother of a rental property that she was interested in leasing at 210 North Hager St. in Barrington. She mentions in the letter that the rental property is located "next to the Barrington High School", and that she met her son at the property so they could look at the rental together.

There is currently an active order of protection against Ms. Mannix which prohibits her from having any contact with her two sons. The order is in effect through January of 2009.

The reporting person followed up on the information received from his ex-mother-in-law by contacting the realtor that met with his ex-wife, identified as Tara Kelleher. He was then able to ascertain through Ms. Kelleher that his son was present during the showing.

The reporting person does not want to pursue a criminal complaint at this time.

| REPORTING OFFICER | DATE/TIME | SUPERVISOR APPROVING |
|---|---|---|
| Off. M. Byrne, 141 | 02-26-08/1700 Hours | |

E+W